UNITED STATES, Appellee,

v.

Private (E-1) Danny R. CAIN, SSN 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, United States Army, Appellant.

CM 436714.

U. S. Army Court of Military Review.

2 Aug. 1978.

---

Colonel Robert B. Clarke, JAGC, Major Benjamin A. Sims, JAGC, Captain Demmon F. Canner, JAGC, and Captain William J. Carter, JAGC, were on the pleadings for appellant.

Colonel Thomas H. Davis, JAGC, Lieutenant Colonel R. R. Boller, JAGC, Captain Lee D. Schinasi, JAGC, and Captain Stephen D. Smith, JAGC, were on the pleadings for appellee.

Before JONES, MITCHELL and De-FORD, Appellate Military Judges.

## OPINION OF THE COURT

MITCHELL, Judge:

In accordance with his plea, the appellant was convicted by a general court-martial of absence without authority. Contrary to his pleas, he was also convicted of disobeying an order of a superior commissioned officer, robbery, violation of a lawful general regulation and disrespect to a superior commissioned officer. These offenses violate Articles 86, 90, 122, 92 and 89, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 886, 890, 922, 892 and 889.

He was sentenced to a bad-conduct discharge, confinement at hard labor for three years and six months, and forfeiture of $374.00 pay per month for three years and six months. The convening authority approved the sentence.

On appeal this case presents the following questions: (a) whether the compulsion of the accused by the military judge to show whether he had a gold tooth violated his Article 31 privilege against self-incrimination; (b) whether the military judge erred to the substantial prejudice of appellant by allowing extensive hearsay testimony to be admitted into evidence; (c) whether the argument of trial counsel on findings was improper and prejudicial to appellant; and (d) whether trial counsel's sentencing argument was improper and prejudicial to appellant.

### INVOLUNTARY SHOWING OF GOLD TOOTH

The robbery victim, Private First Class Ruckman, testified that the robber "had a gold tooth on his right front, about right here, with a star on it." Thereupon, the trial counsel asked the military judge to have the accused stand and open his mouth so the jury could see whether or not he had a gold tooth and if so where it was located. The judge directed the accused to do so and the accused complied. The record shows that he did not testify on the merits but it is silent as to whether he smiled, yawned or otherwise afforded the jury the opportunity to observe his gold tooth other than at the judge's direction.

Appellant now contends that the military judge's order for him to open his mouth forced him to incriminate himself in violation of his Fifth Amendment rights. He further contends that this activity comes under the ambit of Article 31, UCMJ, which requires that before an individual may be asked to incriminate himself he must first be fully warned. He cites as authority *United States v. Penn*, 18 U.S.C.M.A. 194, 39 C.M.R. 194 (1969) and *United States v. White*, 17 U.S.C.M.A. 211, 38 C.M.R. 9 (1967). These cases concern the applicability of Article 31 to the taking of a handwriting exemplar. Appellant also cites *United States v. Newborn*, 17 U.S.C.M.A. 431, 38 C.M.R. 229 (1968), which deals with forced speech in order to make a voice identification.

Although the United States Supreme Court in *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), severely limited the application of the Fifth Amendment privilege against self-incrimination and expressly held it not to be applicable to handwriting exemplars or voice identification, the Court of Military Appeals has held Article 31 to be broader in scope than the Fifth Amendment. *United States v. Aronson*, 8 U.S.C.M.A. 525, 25 C.M.R. 29 (1957).

In *United States v. Rosato*, 3 U.S.C.M.A. 143, 11 C.M.R. 143 (1953), and again in *United States v. Eggers*, 3 U.S.C.M.A. 191, 11 C.M.R. 191 (1953), the Court laid down standards which recognize that acts requiring only the passive cooperation of the accused can be compelled without violating the privilege against self-incrimination. Thus, it allows the compulsion of such acts as taking fingerprints, placing a foot in a footprint, physical examination of the accused's body for scars, forcibly shaving a man, or trimming his hair, requiring him to grow a beard, or try on a garment. *United States v. Rosato, supra*, at 147. Such instances were found not to require active participation and affirmative conduct in the production of incriminating evidence not theretofore in existence.

It would appear then that the forced exposure of a tooth or a prosthetic devise lies somewhere between the taking of a fingerprint and the taking of a voice or handwriting exemplar. The making of a fingerprint requires no effort on the part of the accused. All that is required of him is relaxed submission to the manipulation of his thumb and fingers. Arguably, the self-baring of a tooth requires something more. Of course, the position of the viewed tooth and its proximity to the front of the mouth dictate the degree. Our sister tribunal, the

Air Force Court of Military Review, found that it was permissible to compel an accused to submit to a dental examination for comparison of a tooth fragment found at the crime scene. It found that the warning requirement did not apply because the passive submission of the accused's body to a physical examination simply does not constitute a "statement" within the meaning of Article 31. *United States v. Culver*, 44 C.M.R. 564 (A.F.C.M.R.1971). However, the compulsory obtaining of evidence from an accused's body may be impermissible if obtained in a manner which "shocks the conscience."[1] *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952).

■ A defendant, in a criminal case, even though he has not become a witness in his own behalf, has no maintainable privilege against being required, as in the case before us, to stand[2] or to remove his toupee[3] for identification purposes. To us, there appears to be nothing that "shocks the conscience" in requiring the showing of one's teeth to the jury. Further, the active participation required of one in opening his mouth is much less than in standing so the jury can observe the full length of his body or in removing his toupee to expose a bald head. We, therefore, hold that the act of showing a tooth to the court is not an incriminating communication within the meaning of Article 31, UCMJ.

### ADMISSION OF HEARSAY EVIDENCE ISSUE

Appellant alleges that the military judge allowed the prosecutor to elicit from three defense witnesses a reiteration of what Private First Class Ruckman had told each of them concerning the alleged robbery and erred by failing to give an instruction limiting the use of the testimonial evidence.

The defense concedes that each of these witnesses was called in an attempt to point out inconsistencies in the testimony of the victim, Private First Class Ruckman. The Government goes even further to argue that the defense pointed out the inconsistencies to imply that Ruckman fabricated the robbery story in an attempt to get his money back.

■ If an inconsistent statement has been offered to attack the credibility or recollection of a witness it would be hearsay, admissible only for that limited purpose. Then, a consistent statement would be admissible only to refute the attack or to minimize its impact, and would also be hearsay, admissible for this limited purpose.[4] In these instances the military judge is required to instruct members of the court in open session that the evidence is to be considered for the purpose of determining the credibility of the witness and not for the purpose of establishing the truth of the matters asserted in the statement. Manual for Courts-Martial, United States, 1969 (Revised edition), 1536(2)(2).

■ On the other hand, if the defense establishes or lays the foundation to imply a motive or fabrication, then prior consistent statements are admissible to rebut the charges and/or implications. Rule 801(d)(1) of the Federal Rules of Evidence, states that this type of testimony is not hearsay. In the state courts, the modern trend has been to allow such testimony to be treated as substantive evidence. *McCormick* states that the giving of a limited instruction, in such a case, is needless and useless. McCormick, Evidence, 2 ed. 1972, § 251. Professor Wigmore arrives at the same interpretation. 3A Wigmore, Evidence (Chadbourne rev.), § 1018.

---

1. Capsules containing morphine were forcibly extracted from the accused's stomach by a doctor using emetics introduced through an esophageal tube.

2. *United States v. Sorrentino* (D.C.Pa.1948), 78 F.Supp. 425, *affirmed* (CA3d) 175 F.2d 721, *cert. den.* 338 U.S. 868, 70 S.Ct. 143, 94 L.Ed. 530 (1949).

3. *People v. Collins*, 16 Mich.App. 667, 168 N.W.2d 624 (1969).

4. *United States v. Lombardi*, 550 F.2d 827 (2nd Cir. 1977); *United States v. Juarez*, 549 F.2d 113 (7th Cir. 1977); *see also United States v. Mason*, 40 C.M.R. 1010 (A.F.B.R.1969).

██ It is clear from the record that the defense attempted to show a motive for fabrication on the part of the victim, Ruckman.[5] Under the Federal Rules of Evidence, *supra*, the consistent statements elicited by the trial counsel would not be hearsay and, consequently, would require no limiting instruction. This rule seems to represent the modern trend in the civilian courts. It has merit of easy application in the court room. We feel it should be followed in the military. Therefore, we find the victim's prior consistent statements were properly admitted for the purpose of showing the truth of the matter contained therein. No limiting instruction was required.

## ARGUMENT OF TRIAL COUNSEL ON FINDINGS

Subsequent to the robbery, Private Ruckman confronted the appellant in a third soldier's car. Appellant indicated that he remembered Ruckman as the person who had "lent" him the money. Whereupon, Ruckman accused appellant of "taking" the money. Appellant made no verbal response to the accusation. During final argument, trial counsel made reference to this account and labeled appellant's non-response as "an admission by silence."

██ Before us appellant apparently equates this verbal encounter to an exercise of Constitutional rights under the Fifth Amendment. Such an equation is patently defective. Appellant's particular act of silence cannot be equated to the constitutionally afforded right to remain silent. Specifically, paragraph 140a (4), MCM (Rev.), provides in pertinent part:

*Admission by silence.* If an imputation against a person comes to his attention under circumstances that would reasonably call for a denial by him of the accuracy of the imputation if the imputation

was not true, a failure on his part to utter a denial will support an inference that he thereby admitted the truth of the imputation . . .

If appellant had been in confinement, arrest, or custody or if at the time, he was under official investigation, the inference would not have arisen. But here, Ruckman was not an investigator or other official seeking to question appellant about the offense; he was the victim. Under such circumstances it is reasonable to infer that were appellant innocent, he would have denied the accusation. *United States v. Armstrong*, 4 U.S.C.M.A. 248, 15 C.M.R. 248 (1954), citing *United States v. Creamer*, 1 U.S.C.M.A. 267, 3 C.M.R. 1 (1952).

As the evidence was properly admitted, and not objected to, the reference made thereby by the trial counsel was a fair comment upon the evidence.

## ARGUMENT OF TRIAL COUNSEL ON SENTENCE

██ Here, appellant alleges that the argument of trial counsel on sentence was improper and prejudicial. Specifically the prosecutor told the jury:

While indeed he [the appellant] has an absolute right to make an unsworn statement, you must there again consider the fact that he was not under oath and he cannot be cross-examined upon it.

Since the accused cannot be cross-examined upon his unsworn statement, the Government's remedies are limited to (1) submission of evidence to rebut facts contained therein, and (2) fair and reasonable comment upon facts and opinions contained in or omitted from the statement. *United States v. Dupree*, 40 C.M.R. 444 (A.B.R. 1968). The questioned comment here consisted only of reflecting matters appropriate to the weight to be given appellant's unsworn statement.

He then went on to argue that Ruckman's motive was to involve the military police so they would assist him in getting his money back from those who had "conned" him.

---

**5.** Defense counsel stated in his argument on findings:

"What the defense would ask you now to consider is whether or not PFC Ruckman would have a motive or an—actually, and an opportunity to fabricate this story."

■ Furthermore, trial defense counsel did not register an objection to trial counsel's argument concerning the unsworn statement. Failure to object to improper argument constitutes a waiver in the absence of a flagrant abuse of discretion. *United States v. Wood*, 18 U.S.C.M.A. 291, 40 C.M.R. 3 (1969); *United States v. Doctor*, 7 U.S.C.M.A. 126, 21 C.M.R. 252 (1956). We find no such flagrant abuse.

Although appellant raises the issue of the military judge's deficient pre-sentencing instruction as a tangential comment to this assignment of error, we believe it helpful to discuss it here.

■ During that portion of the trial dealing with extenuation and mitigation of punishment no distinction is made between matters developed by evidence, such as testimony given under oath, and those developed through other means such as an unsworn statement of the accused. There exists no rule at present, requiring the military judge to instruct the court as to the nature and/or permissive use of this type of statement, as it is generally submitted by defense in an effort to ameliorate the punishment to be imposed. The weight to be afforded the statement should be a matter within the sound discretion of the court. *United States v. Simon*, 38 C.M.R. 664 (A.B.R.1968). *See also United States v. Stivers*, 12 U.S.C.M.A. 315, 30 C.M.R. 315 (1961).

However, in *United States v. Wheeler*, 17 U.S.C.M.A. 274, 38 C.M.R. 72 (1967), the court found that a law officer had a duty to tailor the instructions to the evidence in the case both on findings and sentencing. While recognizing that the law officer had some discretion regarding pre-sentencing instructions, it emphasized the requirement of law officers (military judges) to delineate the matters which the court-martial should consider in its deliberations, particularly with respect to the exercise of its sentencing discretion in light of evidence presented in mitigation and extenuation.

Nevertheless, in some instances, the accused's evidence in mitigation has been limited and offered no real explanation for the commission of his offenses. In that situation the law officer's (military judge's) failure to tailor his instruction to the evidence presented in mitigation was nonprejudicial. *United States v. Mabry*, 17 U.S.C.M.A. 285, 38 C.M.R. 83 (1968). Further, in *United States v. McGarvey*, 39 C.M.R. 878 (C.G.C.M.R.1969), our brethren found no prejudice where the law officer while instructing the panel, failed to mention the accused's unsworn statement. The court reasoned that because the unsworn statement contained no real explanation for the offenses the accused was not prejudiced by the law officer's omission.

■ This is essentially the posture of the case which we have before us. The military judge, in his instructions, failed to mention appellant's unsworn statement. Notwithstanding, we find no prejudice. Appellant's unsworn statement largely focused on his civilian background and gave little or no explanation for his offenses. Furthermore, the sentence rendered by the court-martial was less than one-fourth of the allowable maximum confinement.

■ We also note that the military judge did not personally advise the accused of his rights of allocution. This was error. *United States v. Hawkins*, 2 M.J. 23 (1976); paragraph 53(h) (Change 1), MCM (Rev.). However, we find no prejudice. When he spoke (the unsworn statement) he acknowledged his awareness of his right of allocution. The findings and the sentence are affirmed.

Senior Judge JONES and Judge DeFORD concur.