UNITED STATES, Appellee,

v.

Private First Class Anthony R.
McPHAUL, 267–71–7559,
United States Army, Appellant.

CM 447973.

U.S. Army Court of Military Review.

26 June 1986.

For Appellant: Major Marion E. Winter, JAGC, Captain Stephanie C. Spahn, JAGC (on brief).

For Appellee: Colonel James Kucera, JAGC, Lieutenant Colonel Larry D. Williams, JAGC, Captain John F. Burnette, JAGC, Major Byron J. Braun, JAGC (on brief).

Before RABY, CARMICHAEL, ROBBLEE, and RICHARDSON, Appellate Military Judges.

## OPINION OF THE COURT

CARMICHAEL, Judge:

Pursuant to his plea, Private First Class (PFC) McPhaul was convicted of rape in violation of Article 120, Uniform Code of Military Justice [hereinafter cited as UCMJ], 10 U.S.C. § 920 (1982). A general court-martial consisting of officer and enlisted members sentenced him to a bad conduct discharge, confinement for five years, forfeiture of all pay and allowances, and reduction to the grade of Private E–1. The convening authority approved the sentence.

Appellant raises as the first of three assigned errors that the military judge erred by not personally advising him of his several elections with respect to the composition of the court-martial.

Rule for Courts-Martial [hereinafter cited as RCM] 903 pertains to an accused's elections regarding the composition of a court-martial. It prescribes the military judge's duty to ascertain whether an accused wants to be tried by a court-martial that includes enlisted members or, in noncapital cases, whether an accused wants to be tried by military judge alone. Rule for Courts-Martial 903 does not require the military judge to explain these elections to an accused, nor does it set forth a procedure to be used by the military judge for determining whether an accused wants an enlisted court or a military judge alone court. We are mindful that the Discussion relating to RCM 903(c) indicates a clear preference for the military judge personally questioning an accused who requests trial by judge alone, to assure a knowing and understanding waiver of his right to a trial by members. However, such is not the case at bar because appellant did not request to be tried by military judge alone.

■ In this case, although the military judge made only a cursory personal inquiry of appellant,[1] it was under circumstances

---

1. The military judge, after determining that PFC McPhaul had submitted a written request to have enlisted members on his court, addressed him directly concerning his understanding of the types of trial forums that were available to him. The judge stated that apparently PFC McPhaul's civilian defense counsel had discussed with him the "various types of trial" encompassed by a general court-martial, and proceeded to confirm appellant's knowledge of his several elections by conducting the following inquiry:

   MILITARY JUDGE: [D]o the words there [in the written request for enlisted members] mean that you are requesting that you have at least one-third enlisted persons detailed to your case?
   ACCUSED: Yes, sir.
   ....
   MILITARY JUDGE: I'm assuming that Mr. O'Dowd [PFC McPhaul's civilian defense counsel] has informed you basically of the three different types of trial that you could have. Is that correct, PFC McPhaul?
   ACCUSED: Yes, sir.
   MILITARY JUDGE: And do I correctly assume that by submitting this written request, that means you are making the decision to be tried by a panel with officers and enlisted persons. Is that correct?
   ACCUSED: Yes, sir.

where appellant did *not* waive his right to be tried by members, and, moreover, affirmatively exercised his right to be tried by *enlisted* as well as officer members. Further, exercising our fact-finding powers pursuant to Article 66, UCMJ, 10 U.S.C. § 866 (1982), we find that the record establishes PFC McPhaul's knowledge and understanding of *all* of his trial forum rights. First, PFC McPhaul stated on the record that his civilian counsel had advised him of the *three* different types of trial that he could have. Second, he did not waive his statutory right to a trial by members and requested that "at least one-third of [his] court panel be enlisted members." Third, in open court with appellant present, the military judge advised the members of PFC McPhaul's right to be tried by a court of officers, of his right to submit a written request for enlisted members, and of his right to request to be tried by a military judge sitting alone. Fourth, during voir dire, PFC McPhaul's civilian counsel informed the members of the elections available to his client concerning the court's composition, and, because the civilian counsel successfully challenged for cause seven of the eight members then present, he subsequently reiterated his client's several elections to the nine new court members detailed by the convening authority. On both occasions, PFC McPhaul's civilian counsel told the members that his client had elected to be sentenced by a court composed of officer and enlisted members. Accordingly, based on the foregoing facts, we hold that the military judge did not err by failing personally to advise PFC McPhaul of his elections concerning the court's composition.

We will not speculate why the military judge did not follow the procedural guide for courts-martial set forth in Appendix 8 of the Manual for Courts-Martial, United States, 1984, or the modified procedures in Chapter 2 of the Military Judges' Benchbook, Department of the Army Pamphlet 27–9, Change 1 (15 Feb. 1985) [hereinafter referred to as Judges' Benchbook]. Although we recognize that the use of these procedures is not mandatory, the failure to use them invites needless appellate litigation. If this had been a case where we could not have otherwise determined from the record that appellant's choice of a member trial forum was understandingly made, the judge's failure to discuss with and question PFC McPhaul in more detail about his available elections would have resulted in error, requiring a test for prejudice. Article 59(a), UCMJ, 10 U.S.C. § 859(a) (1982). Therefore, military judges should assure themselves that accused are fully aware of and fully understand their trial forum rights. Use of the procedures in the Judges' Benchbook currently is the best and most direct method of accomplishing this.

■ Finally, with respect to this particular assignment of error, even assuming *arguendo* that the military judge committed procedural error, we are satisfied that it was of little or no consequence in the case at bar. First, it can be assumed that PFC McPhaul's civilian defense counsel properly advised his client of his available elections relative to the composition of the court-martial. *See United States v. Nelson,* 21 M.J. 573, 575 (A.C.M.R.1985) (assumption that qualified defense counsel correctly advised accused of his presentencing rights is reasonable and proper), *citing, Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see also United States v. Canatelli,* 5 M.J. 838, 840 (A.C.M.R.) (in the absence of evidence to the contrary, defense counsel presumed to have properly advised accused of his right to be tried by judge alone or with court members), *pet. denied,* 6 M.J. 93 (C.M.A.1978). But we are not left with a bare assumption concerning the adequacy of defense counsel's advice in this case. Appellant was asked by the military judge if his civilian counsel had informed him of the "three different types of trials" that he

However, nowhere in the trial record did the military judge specifically explain to PFC McPhaul that he could waive his statutory right to be tried by members and elect to be tried by judge alone. Article 16, UCMJ, 10 U.S.C. § 816(1982).

could have, and PFC McPhaul's answer was "yes, sir." [2]   Second, if a procedural error did occur, we are satisfied that it fell far short of prejudicing any substantial right of PFC McPhaul.   Article 59(a), UCMJ, 10 U.S.C. § 859(a) (1982); *United States v. Jenkins,* 42 C.M.R. 304, 308 (C.M. A.1970); *United States v. Nelson,* 21 M.J. at 575.

◼ Private First Class McPhaul's second assignment of error stems from the military judge's denial of a challenge for cause of First Lieutenant (LT) Washington, a military police officer detailed as a court member.   It is appellant's position that the presence of LT Washington created an "appearance of evil" and that the military judge should have granted the defense's challenge on that ground alone.   Moreover, because he failed to do so, the defense was forced to exercise its peremptory challenge against LT Washington rather than against a colonel who, at an earlier time in his career, had commanded a Criminal Investigation Command laboratory in Europe. We hold that the military judge did not err in denying the defense's challenge of LT Washington.   During voir dire, the defense elicited the following information from LT Washington: (1) she was a military police platoon leader at an installation other than the one where PFC McPhaul was stationed and being court-martialed; (2) she was not involved in investigating crimes, but dealt with administrative, personnel and training matters; (3) she had a Masters Degree in Criminal Justice; (4) she had worked for a law firm doing antitrust research before entering the Army; and (5) she also had worked for the Department of Licenses as an investigator.   In the latter position, LT Washington investigated persons involved in professional and occupational fields.   No information was elicited from this court member to indicate that she would be un-

able to discharge her sentencing responsibilities fairly and impartially.

"The test for determining the propriety of a challenge for cause is whether the prospective court member is mentally free to render an impartial finding and sentence based upon the law and the evidence presented."   *United States v. Cunningham,* 21 M.J. 585, 587 (A.C.M.R.1985), *pet. denied,* 22 M.J. 275 (C.M.A. 29 May 1986), *citing, United States v. McQueen,* 7 M.J. 281 (C.M.A.1979).   Applying this test to the facts before us, we find that the military judge properly exercised his discretion in denying the defense challenge of LT Washington.   Although mindful of the liberal policy governing the granting of challenges that currently exists in military law, *United States v. Miller,* 19 M.J. 159 (C.M.A. 1985), the record demonstrates no basis for striking LT Washington from the court for cause other than that she was a military police officer.   Her responses during voir dire did not reveal any bias or prejudice suggesting that she would be unable to arrive at an impartial sentence based on the law and the evidence.   Thus, we are left to consider whether the "appearance of evil" doctrine in and of itself is a sufficient basis for sustaining the challenge.

In *United States v. Swagger,* 16 M.J. 759 (A.C.M.R.1983), this court reversed a conviction because it determined that the military judge should have granted a challenge for cause against a military police officer. However, the officer challenged was not only a military policeman, he was the installation provost marshal, president of the court-martial, and had been in law enforcement for approximately 25 years.   Under such circumstances, this court held that an "appearance of evil"—specifically, a common perception that the officer who was the "embodiment of [installation] law en-

---

**2.** We reserve judgment on whether a military judge would meet the present requirements of military law by addressing his inquiries solely to an accused's defense counsel.   An example would be where the military judge inquired of counsel if he had advised his client of his three elections on the composition of the court-martial; if counsel specifically had advised his

client of his right to be tried by members, to include enlisted members (assuming his client were an enlisted soldier); if counsel had informed his client of his right to waive a trial by members and request trial by military judge alone; and whether his client understood his several elections and, if so, what election had his client made.

forcement" could not be unbiased when acting as president of a court-martial—dictated the reversal. *United States v. Swagger*, 16 M.J. at 760. Since the facts of the instant case are distinguishable from those of *Swagger*, we do not see LT Washington's initial presence at PFC McPhaul's trial as providing an appearance of drumhead justice.[3] However, like the first assignment of error, this issue also falls into the category of needless litigation.

■ By this time it can be assumed that staff judge advocates are aware of this court's position on the appointment of military policemen as court members. *See United States v. Swagger*, 16 M.J. at 759 (the appointment of policemen as court-martial members is not a good practice). It can also be assumed that they are aware of the principle that military judges should be liberal in passing on challenges for cause. While we do not question the competence of military policemen to sit as members simply because they are military policemen, and "will not assume bias or prejudice where none is shown," *United States v. Brown*, 13 M.J. 890, 892 (A.C.M.R.), *pet. denied*, 14 M.J. 283 (C.M.A.1982), we continue to believe that the presence of military policemen as court members creates needless litigation and should be avoided when possible. The issue raised in this case reinforces our belief. Staff judge advocates should heed the following observation by then Senior Judge Mitchell of this court and act accordingly:

> We would be remiss if we did not go on to observe *that the appointment of policemen to courts-martial is not generally a good practice*.... Admittedly,

there may be some commands wherein it could be extremely difficult to avoid. It is largely to accommodate those situations that we do not exercise our supervisory authority to establish any *per se* rules in this area but are content to search for bias or prejudice in individual cases.

*United States v. Brown*, 13 M.J. at 892 (emphasis added).

Appellant's third and last assignment of error is that the military judge erred in denying the defense's motion for a mistrial because trial counsel's presentencing argument was inflammatory. Private First Class McPhaul pleaded guilty as an aider and abettor to the rape of an unconscious fifteen year old girl. Although he himself was unable to consummate intercourse with the victim, he helped another soldier rape the girl by holding one of her legs and verbally encouraging the soldier who was committing the rape. He then watched as two other soldiers raped the victim, and as they and other soldiers committed various sexual acts on her person to include anal and oral sodomy. Another soldier who also was watching the gang rape and other sexual attacks got his camera and took photographs. One of these color photographs shows PFC McPhaul holding the unconscious girl's leg while another soldier rapes her and a third soldier watches. In another photograph a smiling PFC McPhaul is one of four soldiers clustered around the victim.

The graphic depiction of PFC McPhaul's participation in and presence during these continuing and despicable sexual attacks does not end with the foregoing two photo-

---

**3.** We note that the use of the "appearance of evil" standard by this court in ruling that an individual was not competent to sit as a member has been infrequent. *See United States v. Swagger*, 16 M.J. at 760; *United States v. Hampton*, 50 C.M.R. 232, 233 (A.C.M.R.1975) (improper to allow individual who worked in prosecutor's office to sit as court member because of the appearance of evil). A convening authority who appoints his chief law enforcement officer or an individual who occupies a similar duty position vis-a-vis the investigation or prosecution of military offenses to sit as a court mem-

ber runs a twofold risk: first, that the individual's duty assignment, together with other factors developed during voir dire, will be enough to sustain a challenge for cause against him, and, second, that the very nature of the individual's duty assignment, standing alone, will bring the appearance of evil doctrine into play.

This court, however, consistent with current regulatory policy and absent extreme factors similar to those found in *Swagger* and *Hampton*, will continue to consider issues challenging the impartiality of court members against the actual bias or prejudice appearing in the record.

graphs, however. Private First Class McPhaul also is depicted crowded against the victim's body as she is being anally sodomized by another soldier; and, in yet another photograph, he is shown with his tongue out while a soldier apparently is orally sodomizing the unconscious girl through an act of fellatio.

Marshaling this evidence, the trial counsel made the following remarks as part of his presentencing argument. He told the members that "[t]he crime was so filled with depravity and perversion that only the most severe sentence would suffice...."; that the Army did not tolerate "degenerate scum" like PFC McPhaul; that McPhaul might be a good worker but he was a "miserable human being," and that his actions were "subhuman." Trial counsel went on to characterize PFC McPhaul as a Dr. Jekyll and Mr. Hyde, and then stated that on the night of the crime McPhaul was the "most beastly old Mr. Hyde." Later in his argument, trial counsel made these comments about PFC McPhaul:

> The accused's character as good character is only skin deep. He sloughed off the veneer of civilization in a matter of seconds that night. Turning into Mr. Hyde, drooling over his naked victim. He is a chameleon that shed his skin, he shedded [sic] it in an instant, gleefully attacking this girl.

At one point during his argument, trial counsel referred to the color photographs that were in evidence and asked rhetorically whether appellant looked remorseful or had the look of "some slavering animal." Trial counsel also referred to the photographs in asking two court members by name, again rhetorically, if PFC McPhaul was smiling at them. In the concluding portion of his argument trial counsel stated:

> The defense counsel, in voir dire and in argument, indicated that the accused has been punished enough, he has been convicted. A federal felony conviction and somehow that is enough. His mother also agrees, she doesn't think any punishment is necessary. The defense, the

accused obviously agrees, he doesn't want to be punished. So, the defense counsel is, more or less, saying you are irrelevant, you are just a rubber stamp, he's already been punished enough. Just go ahead and sign off on it, the man is punished. Well, none of this, thankfully, it's not the accused's say as to what happens to him today.

Appellant's civilian defense counsel did not object to trial counsel's argument. Appellant's counsel had made the opening presentencing argument and was given the opportunity to make a rebuttal argument. During this rebuttal argument, the civilian counsel commented on trial counsel's characterization of his client as a "slavering animal" and a "Jekyll and Hyde," and told the members that trial counsel's argument was "totally baseless and "unsupported by any evidence or testimony." When the defense had finished its rebuttal argument, the military judge instructed the members on sentencing without objection by either side. The defense then asked for an out-of-court hearing and in the hearing moved for a mistrial. The grounds for the motion were that trial counsel had made an inflammatory argument that substantially prejudiced PFC McPhaul and that, further, trial counsel had argued uncharged misconduct. The military judge denied the motion and we are satisfied that he did not err in doing so in this case.

Although RCM 905(e) states as a general principle that objections not made before a court-martial is finally adjourned are waived, RCM 1001(g) specifically provides that "[f]ailure to object to improper argument before the military judge *begins to instruct* the members on sentencing shall constitute waiver of the objection" (emphasis added). We find RCM 1001(g) controlling. At no point in the course of trial counsel's allegedly inflammatory argument did the defense interpose an objection, notwithstanding that such an objection could have obviated the problem immediately. Instead, defense counsel, in rebuttal, elected to repeat some of the trial counsel's "inflammatory" characterizations of PFC

McPhaul and argued that they were unsupported by the evidence. *Only after the military judge had finished his sentencing instructions did the defense object to trial counsel's argument and move for a mistrial.* We believe the waiver provision of RCM 1001(g) should be strictly enforced. *See also* RCM 919(c) (waiver of objection to improper argument for findings); *cf.* Military Rule of Evidence 103(d) (error may not be predicated upon an *evidentiary ruling* unless the ruling materially prejudices a substantial right of a party, and a timely objection or motion to strike appears of record); *United States v. Nakamura,* 21 M.J. 741, 745 (N.M.C.M.R.1985) (failure to object to lack of corroboration of confession when it's admitted into evidence constitutes waiver).

This is not the issue before us, however, since the defense chose as a matter of trial strategy to move for a mistrial. Rule for Courts-Martial 915(a) is the governing rule as to when a military judge should declare a mistrial. It provides, in part, that "[t]he military judge may, as a matter of discretion, declare a mistrial when such action is manifestly necessary in the interest of justice because of circumstances arising during the proceedings which cast substantial doubt upon the fairness of the proceedings." The Discussion relating to RCM 915(a) pertinently provides that "[t]he power to grant a mistrial should be used with great caution, under urgent circumstances, and for plain and obvious reasons. As examples, a mistrial may be appropriate when inadmissible matters so prejudicial that a curative instruction would be inadequate are brought to the attention of the members...."

■ It is axiomatic that a trial counsel is permitted to make forceful argument, commenting both on the evidence and the reasonable inferences that are supported by the evidence. He is charged with being as zealous an advocate for the Government as defense counsel is for the accused. "He may strike hard blows, but they must be fair." *United States v. Doctor,* 21 C.M.R. 252, 259 (C.M.A.1956), *citing, Berger v.* *United States,* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). We agree with PFC McPhaul that trial counsel's argument was impassioned and was designed to arouse the emotions of the court members. And we agree that at times trial counsel's presentencing argument could be viewed as being somewhat inflammatory. But we would strongly disagree that trial counsel's argument was improper. We believe that it was based on evidence found in the record as well as on reasonable inferences drawn from that evidence, and, as such, its overall content was fair comment on the despicable crime committed by PFC McPhaul.

Trial counsel's sentencing argument was solidly grounded on a stipulation of fact agreed to by PFC McPhaul, which included as enclosures four color photographs depicting his involvement in the sordid gang rape. Comments that appellant was a Dr. Jekyll and Mr. Hyde were in response to the defense's representation of PFC McPhaul as a model young man who suffered a temporary moral lapse. The defense counsel portrayed appellant as having yielded to peer pressure, while, based on the stipulation of fact, the trial counsel fairly countered that it was McPhaul who had initiated the sexual attacks on the unconscious teenage girl. Although references to PFC McPhaul as a "slavering animal" and "degenerate scum" were inartful, they were not improper in light of the depraved nature of the crime and appellant's continued presence during its commission. Photographs depicting PFC McPhaul grinning while crowded around the nude victim with three other grinning soldiers, and mugging for the camera with his tongue stuck out while the girl apparently was being orally sodomized in the background, merited forceful comment. As recorded on film, appellant appeared to affect a jaunty insouciance about the victim.

A less than aggressive argument by the trial counsel would have been inconsistent with the barbaric acts depicted, and would have tended to create the impression that the Government did not view PFC

McPhaul's crime as a particularly serious one. Trial counsel's choice of adjectives was not always in the best of taste, as can happen in the heated strife of trial advocacy, but his choice of adjectives in characterizing appellant did not exceed the bounds of fair comment. *See United States v. Turner*, 17 M.J. 997, 999 (A.C.M.R.) (sterile or anemic arguments are not required to stay within the bounds of fair comment; in most cases effective advocacy requires blunt and emphatic language), *pet. denied*, 19 M.J. 17 (C.M.A.1984); *United States v. Vilches*, 17 M.J. 851, 855 (N.M.C.M.R.) (referring to accused as "pervert," "closet homosexual," and "chickenhawk" fair comment in forcible sodomy case), *pet. denied*, 19 M.J. 57 (C.M.A.1984).

Further, trial counsel's remarks that the defense counsel was saying that the court members were "irrelevant" and "just a rubber stamp" must be considered in the context in which they were made. These remarks were an attempt to counter the defense's position that appellant had been punished enough by his conviction, and that additional punishment would serve no useful purpose.

■ Nor did trial counsel's rhetorical question about whether PFC McPhaul, as depicted in the prosecution's photographic evidence, was smiling at certain court members amount to an appeal for the members to adjudge a sentence based on personal considerations. We are satisfied that no member reasonably could have believed that trial counsel was asking him to visualize either his wife or daughter as the victim, and to sentence PFC McPhaul accordingly. *See United States v. Shamberger*, 1 M.J. 377 (C.M.A.1976) (improper for trial counsel to suggest in aggravated rape case that court members place themselves in the position of victim's husband, who was present when multiple rapes occurred).

■ Since we hold that trial counsel's presentencing argument did not exceed the bounds of fair comment under the circumstances of this case, any defense strategy of withholding timely objection to the trial counsel's argument, of highlighting in re-buttal argument several of the remarks defense apparently found objectionable, and of moving for a mistrial after the members had received sentencing instructions, in a word, failed. But even assuming *arguendo* that trial counsel's presentencing argument was improper, the cumulative effect of the argument from beginning to end did not prejudice the substantial rights of PFC McPhaul. *See* Article 59(a), UCMJ, 10 U.S.C. § 859(a) (1982); *cf. Darden v. Wainwright*, —— U.S. ——, —— – ——, 106 S.Ct. 2464, 2471–2473, 91 L.Ed.2d 144 (1986) (improper comments by a prosecutor do not *per se* violate due process standards). Thus, the military judge was not required *sua sponte* to give a curative instruction. *But cf. United States v. Smart*, 17 M.J. 972, 973 (A.C.M.R.1984) (military judge has obligation to act *sua sponte* when there is *fair risk* that improper argument will have an appreciable effect upon the court members) (emphasis added).

In reviewing trial counsel's entire presentencing argument, we do not find its content to be a circumstance casting substantial doubt on the fairness of appellant's sentencing proceedings. Accordingly, we find that the military judge did not abuse his discretion in denying the defense's motion for a mistrial in this case. *See* RCM 915(a); *United States v. Matthews*, 13 M.J. 501, 515 (A.C.M.R.1982) (en banc) (whether to declare a mistrial is within the discretion of the military judge; it is "an extreme remedy ... appropriate when circumstances arise that cast substantial doubt on the fairness of the trial."), *rev'd on other grounds*, 16 M.J. 354 (C.M.A.1983); *cf. United States v. Browers*, 20 M.J. 356, 360 (C.M.A.1985) (Cox, J., concurring) ("This case clearly demonstrates that we must continue to give military trial judges the reponsibility and authority to manage and control courts-martial....").

■ Appellant personally contends that his sentence is excessive. We disagree. Appellant's offense of rape subjected him to a possible sentence of life imprisonment. He negotiated a pretrial agreement which provided that the convening authority could

not approve any confinement in excess of seven years. The convening authority could, however, have approved a dishonorable discharge had one been adjudged. But PFC McPhaul received a sentence that was even lower than the one he had bargained for with the convening authority: he was sentenced to a *bad conduct discharge* (a less severe punitive discharge than that permitted by his pretrial agreement), confinement for *five years* (two years less confinement than that permitted by his pretrial agreement), total forfeitures, and reduction to the grade of Private E–1. Parenthetically, we would observe that a lesser sentence than that negotiated by appellant militates against the view that it resulted from an improper argument substantially prejudicing appellant's rights.

With the foregoing factors in mind, we have considered the trial record in its entirety and have evaluated with great care appellant's impressive character evidence against the serious nature of his offense. Having done so, we conclude that PFC McPhaul's sentence is not excessive. *See United States v. Hendon,* 6 M.J. 171, 175 (C.M.A.1978) ("Absent evidence to the contrary, accused's own sentence proposal is a reasonable indication of its probable fairness to him.").

Accordingly, the finding of guilty and the sentence are affirmed.

Senior Judge RABY and Judge RICHARDSON concur.

Judge ROBBLEE took no part in the decision of this case.