UNITED STATES, Appellee,

v.

Private E–1 Samuel WILLIAMS,
224–98–9416, United States
Army, Appellant.

CM 446852.

U.S. Army Court of Military Review.

7 Aug. 1986.

For Appellant: Lieutenant Colonel Arthur L. Hunt, JAGC, Major Marion E. Winter, JAGC, Captain Carolyn F. Washington, JAGC, Major Allan L. Placke, JAGC (on brief).

For Appellee: Colonel James Kucera, JAGC, Major Bryon J. Braun, JAGC, Captain Amaury R. Colon, JAGC (on brief).

Before WATKINS, LYMBURNER and SMITH, Appellate Military Judges.

OPINION OF THE COURT *

SMITH, Judge:

Contrary to his pleas, appellant was convicted by a general court-martial composed of officer and enlisted members of rape and forcible sodomy in violation of Articles 120 and 125, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920 and 925 (1982). He was sentenced to a dishonorable discharge, confinement for twenty years, and forfeiture of all pay and allowances. The convening authority approved the sentence.

In argument on sentencing, the trial counsel implored the court members to adjudge a sentence which included imprison-

* Vacated and rehearing en banc ordered, *United States v. Williams* CM 446852 (A.C.M.R. 17 Sept. 1986) (en banc).

ment for life. During the first portion of his argument the trial counsel established the "standard" the members were to use in adjudging an appropriate sentence:

TC: Members of the court, my last words to you 40 minutes ago was that the man who sits 15 feet from you is a rapist. You obviously agreed with the government's contention. Now, your mission is to determine what should be done with this rapist. Now, in determining this we would ask each of you, representing the Army, representing society, to determine what is appropriate. What is appropriate for Private Williams? What will it take to impress on Private Williams that he did was wrong—was terribly wrong? You also must consider what is necessary for society. *In coming to your decision now, you must determine how long it will be until you all, representing society, want this rapist walking among your daughters.* This man, of course, had forcible sodomy. *How long do you think until you want him walking among our daughters?*

Record at 219–220 (emphasis added). He further reinforced this "standard" near the conclusion of his argument: "How many days do you want to go by before you let this man out among your daughters—our daughters." (R. 222). The trial defense counsel did not object to the trial counsel's argument, request curative instructions, or move for a mistrial.

■ The presentencing argument was clearly aimed at inciting the passion of the members by inviting the members to place "their daughters" as appellant's next victim. *Cf. United States v. Shamberger,* 1 M.J. 377, 379 (C.M.A.1976) (trial counsel urged members to picture themselves as the rape victim's husband, held in a helpless position as three men raped his wife); *United States v. Wood,* 40 C.M.R. 3, 8–9 (C.M.A.1969) (asking members if they wanted the accused to have access to other young boys, or *"your own sons"* (emphasis

added), and threatening members with ostracism or contempt if they failed to return severe sentence in accord with prosecution's appeal); *United States v. Boberg,* 38 C.M.R. 199 (C.M.A.1968) (appeal to members to equate a victim to a brother); *United States v. Nelson,* 1 M.J. 235 (C.M.A. 1975) (equating the tactics practiced by a defense witness to those of Adolf Hitler); *United States v. Nellum,* 21 N.J. 700 (A.C. M.R.1985) (asked military judge whether he would like the accused to walk the streets in his community or neighborhood). *See generally* ABA Standards for Criminal Justice: The Prosecution Function, Standard 3–5.8(c) (counsel should not use arguments calculated to influence the passions of the jury) and 5–8(d) (should refrain from argument which would divert the jury from its duty to decide the case on the evidence ... by making predictions of the consequences of the jury's verdict), *made applicable by* Department of the Army Regulation 27–10, Legal Services: Military Justice, para. 5–8 (1 July 1984). Accordingly, we hold that the quoted portion of trial counsel's argument was improper. The court must now resolve the related issues of whether application of the waiver doctrine is appropriate, Manual for Courts-Martial, United States, 1984, Rule for Courts-Martial [R.C.M.] 1001(g) (failure to object to improper presentencing argument before instructions to members constitutes waiver of objection), and whether appellant was prejudiced by the improper argument.

■ Appellant now contends that trial counsel's argument improperly influenced the court members to adjudge an excessive sentence. The government, citing *United States v. Doctor,* 21 C.M.R. 252 (C.M.A. 1950) and *United States v. Fisher,* 17 M.J. 768 (A.F.C.M.R.1983), *petition granted,* 18 M.J. 150 (C.M.A.1984), initially asks this court to reject the assignment of error on the basis of waiver. *See United States v. McPhaul,* 22 M.J. 808 (A.C.M.R.1986) (waiver provision of R.C.M. 1001(g) should be strictly enforced).[1] After careful con-

---

**1.** While this Court, in *McPhaul,* did state that the waiver provision should be strictly enforced,

it ultimately tested for prejudice and found that

sideration of both case precedent and the procedural rules, we find that neither requires, nor in this case allows, waiver of the issue on appeal. *See Darden v. Wainwright,* — U.S. —, —, 106 S.Ct. 2464, 2472, 91 L.Ed.2d 144 (1986) (relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process) citing *Donnelly v. DeChristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). *See generally* Analysis of Rules for Courts-Martial 919(c) and 1001(g), App. 21, A 21–59 and 21–62 (sections are generally consistent with current practice); *United States v. Wood,* 40 C.M.R. 3, 8 (C.M.A.1969) (military judge had duty to act on improper argument *sua sponte* where error was plain); Manual for Courts-Martial, United States, 1969 (Revised edition), para. 72 *c* (military judge may order that argument be confined to proper matters and that any improper part already made be disregarded). Where improper inflammatory argument may have affected the substantive due process rights of an accused, we are obligated to test for prejudice.

■■■ In *United States v. Doctor,* the Court of Military Appeals stated:

> The failure to object [to improper argument] in the trial arena where the harmful effect, if any, might be ameliorated by prompt instructions from the law officer, *normally* raises the doctrine of waiver and precludes an accused from asserting a claim of error on appeal. *However, that principle is not usually applied if the abuse of discretion is so flagrant as to charge the law officer with a duty to stop the discourse sua sponte.* An accused is entitled to a just trial, free of unfair appeals to passions and prejudices, and the law officer must direct the proceedings to that end.

*Doctor,* 21 C.M.R. at 261 (emphasis added). In this case we find that the military judge had a duty to interrupt the argument and give corrective instructions. He is more than "a mere referee," *Shamberger* at 379, and has an obligation to ensure that appellant receives a sentence which is not the product of an improper inflammatory argument. *See United States v. Smart,* 17 M.J. 972, 973 (A.C.M.R.1984) (military judge has *sua sponte* obligation to act when there is a "fair risk" that an improper argument will have an appreciable effect upon members); *United States v. Roser,* 21 M.J. 883, 885 (A.C.M.R.1986) (when error has been committed, the military judge is responsible for employing appropriate remedies when necessary in order to preserve the actual or apparent fairness of the proceedings). *Compare* ABA Standards For Criminal Justice, Standard 6–1.1(a) commentary and Standard 3–5.8(e) (1986) (responsibility of court to ensure that final argument to the jury is kept within proper, accepted bounds), *with United States v. Knickerbocker,* 2 M.J. 128, 130–31 (C.M.A. 1977) (Fletcher, C.J. concurring in the result) (although ABA Standards governing conduct of trial judge and prosecutor not controlling law, they reflect the ultimate outcome of a case-by-case analysis of the improper argument issue). Thus, despite trial defense counsel's failure to object, we have carefully reviewed the record and have determined that there is more than a fair risk that appellant's substantive due process rights were adversely affected by the improper argument. We fully concur with the dissenting opinion insofar as it characterizes the offenses as "odious". In fact, it is the nature of the offenses and the high probability of the members' emotional response to trial counsel's improper argument, within that context, that convinces us that the appellant's due process rights were adversely affected.[2] *See United States v. Young,* 470 U.S. 1, 105 S.Ct. 1038,

---

the trial counsel's sentencing argument was *not* improper.

**2.** As requested by defense appellate counsel, the court has judicially noted that an accomplice was convicted of the same offenses as the ac-

cused and was sentenced by court members to a dishonorable discharge, confinement for eight years, total forfeitures, and reduction to the grade of Private E–1.

84 L.Ed.2d 1 (1985) (Court's confidence in the outcome of the proceedings undermined to an unacceptable degree); *United States v. Shamberger*, 1 M.J. at 379 ("fair risk" that inflammatory argument prejudiced the accused).

As the Court of Military Appeals stated in *Wood*, 40 C.M.R. at 8: "[T]o ask a court member to place himself in the position of a near relative wronged by the accused is to invite him to cast aside the objective impartiality demanded of him as a court member and judge the issue from the perspective of personal interest." (citations omitted). The plain import of the trial counsel's argument in this case was that the members should cast aside objectivity and promote a purely personal interest, *i.e.* protect their near relatives (daughters) from the appellant by adjudging a lengthy sentence to confinement. The government has failed to show this court that the members were not affected by trial counsel's improper argument or that the error had but a slight effect on the determination of an appropriate sentence. *Cf. Berger v. United States*, 295 U.S. 78, 89, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935); *United States v. Barnes*, 8 M.J. 115 (C.M.A.1979). While corrective action is required, we do not believe that this court should reassess the sentence because of the nature of the error and the incomplete state of the record. *But see United States v. Fisher*, 21 M.J. 327 (C.M.A.1986) (court was able to purge the prejudicial effect of an error which might have led the members to impose a sentence more severe than they might have imposed had the error not occurred). As requested by appellant, our corrective action will include return of the record for a new sentencing hearing before the forum of appellant's choice.

We have considered the other errors raised, including those personally raised by the appellant, and find them to be without merit.

The findings of guilty are affirmed. The sentence is set aside. A rehearing may be ordered by the same or a different convening authority.

Judge LYMBURNER concurs.

WATKINS, Senior Judge, dissenting:

I dissent. In my view, any error in the presentencing argument of the trial counsel was waived, and, in any event, was not materially prejudicial to the substantial rights of the appellant. More specifically, I perceive nothing resembling a due-process violation. *See generally United States v. Wood*, 40 C.M.R. 3 (C.M.A.1969); *United States v. Tanksley*, 7 M.J. 573 (A.C.M.R.1979), *aff'd* 10 M.J. 180 (C.M.A.1980) (summary disposition). Instead of authorizing a rehearing on the sentence, I would approve the findings of guilty and the sentence.

Over his pleas of not guilty, the appellant was convicted of raping and forcibly sodomizing (separate charges) an eighteen-year-old German girl in a field in the vicinity of Neu Ulm, Germany on 9 September 1984.[1] The competent evidence of record established: (1) that the young female victim, who had been offered a ride home from a disco by a serviceman with whom she was previously acquainted, was gang-raped and forcibly penetrated innumerable times by four soldiers; (2) that the perpetrators alternated sexual positions often during the thirty to forty-five minute incident; and (3) that, among other things, she was made to assume a dog-like stance so that the principal actors, in teams of two, could criminally abuse her simultaneously. The evidence further established that the accused was a leader of this felonious band and, as a minimum, was very influential in controlling the activities of the others. Suffice it to say that the debasement and humiliation suffered by the victim was absolute.

There is no dispute that this case was one with emotional overtones and that it

---

**1.** A third charge, alleging the offense of kidnapping, was dismissed on prosecution motion sub- sequent to arraignment.

was vigorously contested. Against this background, it is not surprising that the presentencing argument of the trial counsel was hard-hitting. In discussing the concepts of general and specific deterrence, the trial counsel twice asked the members to ponder the question of how long the accused should be incarcerated before he again is permitted to walk among "your daughters," "our daughters." I agree with the majority that these two phrases should not have been used in argument by the trial counsel and that, to that extent, his argument properly can be regarded as a source of error. I differ markedly, however, both as to the nature of the error and the most appropriate remedy.

In my view, the erroneous portion of the argument must be analyzed in context. To this end, the presentencing argument of the trial counsel, in its entirety, is attached to this opinion as the Appendix. In light of the entire record, I am persuaded that the delict was relatively minor and that appellant's right to a fair trial was in no way abridged. In this connection, the guidance provided by Chief Judge Quinn more than seventeen years ago is particularly appropriate:

> The accused contends he was prejudiced as to the sentence by improper argument of trial counsel.
>
> Before considering the specifics of the allegation of error, it is appropriate to note that no objection was made to any of the remarks now viewed as constituting, in the aggregate, a denial of due process. We are not inclined to penalize an accused for flagrant oversights or neglects of his counsel at trial [citation omitted], but defense has some obligation to object to argument regarded as an appeal to passion or deemed unsupported by the evidence. Timely objection can result in timely correction of improper argument, and appropriate instruc-

tions can, in many instances, purge all possibility of harm [citation omitted]. The absence of objection tends to indicate that the defense did not regard the prosecutor's argument as egregiously improper and is a persuasive inducement to an appellate court to evaluate the prosecutor's argument in the same light as the defense probably considered it at trial [citations omitted].

*United States v. Wood,* 40 C.M.R. at 5.

In a similar vein, the President has prescribed, pertinently: "Failure to object to improper argument before the military judge begins to instruct the members on sentencing shall constitute waiver of the objection." R.C.M. 1001(g). This waiver provision is to be strictly enforced. *United States v. McPhaul,* 22 M.J. 808, 813, 814 (A.C.M.R.1986).

There was, in fact, no objection by the trial defense counsel on 27 December 1984 when this case was tried. Nor was there any objection when, subsequent to the court-martial, the accused and his defense counsel completed the appellate rights form and noted for the benefit of the convening authority and other appellate reviewing officials four specific trial errors or grounds for relief, none of which was in any way related to the presentencing argument of the trial counsel. Nor was this matter mentioned by the trial defense counsel on 5 February 1985 when he submitted a written "Goode [or R.C.M. 1105] Response" setting forth two separate bases for sentence relief, neither of which was related to the instant appellate issue. Moreover, the adjudged sentence, while severe, cannot fairly be said to be disproportionate to the odious offenses of which the appellant was properly convicted.[2] This is true for a number of reasons, including: (1) as a practical matter, the appellant was in very serious jeopardy of being sentenced to prison for life; (2) his role in the perpetra-

---

**2.** Official military records on file in the office of the clerk of this court indicate that a co-accused, who was separately tried and convicted by a general court-martial of charges virtually identical to those upon which this appellant was arraigned, was sentenced to a dishonorable dis-

charge, confinement for *thirty* years, forfeiture of all pay and allowances, and reduction to the grade of E-1. *United States v. Douglas,* CM 446985 (A.C.M.R. 29 Jan.1986) (unpub.), *petition denied,* 22 M.J. 248 (C.M.A.1986).

tion of these offenses was much greater than that of a mere willing participant; and (3) his service record was already flawed.[3]

To the extent the lead opinion, as an academic matter, seeks to advance the proposition that there should be, and on proper facts undoubtedly is, a due-process exception to the evidentiary rule set forth in R.C.M. 1001(g), I have no quarrel with it. It is my considered judgment, however, that this lofty constitutional threshold was not met in this instance. After all, the governing criterion is not a perfect trial—few are—it is whether the accused's trial was "fundamentally unfair." *Darden v. Wainwright,* —— U.S. ——, ——, 106 S.Ct. 2464, 2473, 91 L.Ed.2d 144 (1986). Common sense and judicial experience at both the trial and appellate level convince me that the reason the argument of the trial counsel was treated as relatively innocuous by *all* of the parties to the court-martial—both during the trial and at the initial review stage—is that, in the context of the entire proceedings, it was in fact relatively innocuous.

Finally, I disagree with the notion that the "standard" which was employed by the members during the closed-session deliberations on sentence was authoritatively established by the trial counsel in one or two isolated phrases of argument. The military judge specifically, and properly, instructed the members that it was his duty to instruct on the law, and that argument by counsel did not constitute evidence. Additionally, the trial defense counsel responded in the negative when, at the conclusion of the judge's presentencing instructions to the members, he was asked specifically whether he had any objection to the instructions as given or desired to request additional instructions.

For all of these reasons, I conclude that, in the context of the entire record, the argument error in issue was neither egregious nor unfairly prejudicial; that, in keeping with the general principle of decisional law and the unequivocal prescription of R.C.M. 1001(g), it was waived; that the remaining assignments of error are without merit; and that the findings of guilty and the sentence should be affirmed.

## APPENDIX

MJ: Proceed, Captain [K].

TC: Thank you, sir.

TC: Members of the court, my last words to you 40 minutes ago was that the man who sits 15 feet from you is a rapist. You obviously agreed with the government's contention. Now, your mission is to determine what should be done with this rapist. Now, in determining this we would ask each of you, representing the Army, representing society, to determine what is appropriate. What is appropriate for Private Williams? What will it take to impress on Private Williams that he did was wrong—was terribly wrong? You also must consider what is necessary for society. In coming to your decision now, you must determine how long it will be until you all, representing society, want this rapist walking among your daughters. This man, of course, had forcible sodomy. How long do you think until you want him walking among our daughters? Now, who is this man? A good soldier? No, he's done drugs, got a 15. One stupid mistake? That one is not going to work. He knew what he was doing. He thought he could get away with it; he thought he could get over, but he didn't. Who knows him? You've read the statement given by Douglas. Just to ponder a few thoughts here, in 2 days after. Williams asked me to return to the car and ask the girl if she would have sex with them. Williams told me I don't know how to do it right and went to the car. Williams and Biggs were going to force the girl to have sex. Williams told her if she did not suck his dick, she was not going to be taken home. Williams said he was in charge, and we would all do what he said. That's the man. That's the man that you've got to determine an appropriate sen-

---

**3.** Prosecution aggravation evidence on sentencing included a record of prior nonjudicial punishment (DA Form 2627) for wrongful possession of marijuana in September 1983.

tence for. The judge asked you all this morning, first thing; he said, I'm advising you that these offenses carry a life penalty. Does that frighten you? Does that make any of you feel at ease about being a member here today? You all said it didn't. Why would there be a crime that you could put a man in jail for his life? What kind of crime would have to be shown to you to justify that? A crime that shows a total disregard for human values. This woman was treated like a piece of meat, was passed from one man to another, was violated in every orifice on her body. That's the man. That's the crime. This is one of the worse crimes that can be committed. When you're thinking about appropriate sentence, think of Private Williams as he sits here all quiet before you. Does he look like an animal? No. He has behaved himself today? Yes, he looks like a pretty nice guy. When you're thinking about appropriate sentence, think of that Williams. Think of Williams on the night when he and his friends gang raped Ms. Dilg. Think of the night when this Williams who was—now he's so quiet and calm, was directing the show. When this Williams called off his friend who couldn't get the girl, who couldn't persuade the girl; this Williams who pulled off her clothes, this Williams who raped and committed forcible sodomy on that young woman. Think about that young woman, not poor Private Williams as he sits here before you. Think of the agony that this woman went through in determining how long it'll be until any of you is willing to take the chance on imposing that agony on someone else. Think of the shame that this woman feels. Think of the scars on this woman. I'm not talking about her vaginal bleeding. There are no scars to her body, but this woman who, for the rest of her life, will have this scar on her mind where it can't be cured. No plastic surgery can be done on a scar like this. This is something this woman will live with everyday of her life. Everyday of her life she will suffer from this man. How many days do you want to go by before you let this man out among your daughters—our daughters. This is the man; these are the crimes that warrant life imprisonment. This man cannot be allowed to mingle among good soldiers or innocent women. He has no control. He saw what he wanted, and he took it. That's the man that you're going to sentence, and for these reasons, for the total lack of selfcontrol, these reasons are why you must insure for the good of society—not just the Army; the Army is huge, but for the good of society—how long do you want it to be before this man walks among 19 year old girls again. He should never be given this opportunity. Is the government asking for a pound of flesh? Is the government asking that this man be dealt with unreasonably? What kind of behavior did this man show? Was he reasonable with the way that he dealt with someone in his control? Show him the same mercy that he showed Ms. Dilg. What mercy did he show? Douglas, again, because he told you eventually it got to the point where even Douglas said no more, leave her alone. What about this man? I want more; she's sitting between us. We're going to get some more on the way home. This man wasn't satisfied. That's the mercy he showed his victim. That's how much mercy he should be showed today.

TC: Thank you, members.