UNITED STATES, Appellee

v.

Private E–1 Samuel WILLIAMS,
224–98–9416, United States
Army, Appellant.

CM 446852.

U.S. Army Court of Military Review.

9 Jan. 1987.

For Appellant: Lieutenant Colonel Arthur L. Hunt, JAGC, Major Joel D. Miller, JAGC, Major Marion E. Winter, JAGC, Captain Carolyn F. Washington, JAGC, Major Allan L. Placke, JAGC, (on brief); Captain James J. McGroary, JAGC.

For Appellee: Colonel James Kucera, JAGC, Lieutenant Colonel Larry D. Williams, JAGC, Major Byron J. Braun, JAGC, Captain Amaury R. Colon, JAGC (on brief).

Before the Court sitting en banc.

## OPINION OF THE COURT ON RECONSIDERATION

WATKINS, Senior Judge:

On the night of 9–10 September 1984, an eighteen-year-old German girl accepted a ride home from a discotheque with an American soldier whom she knew as the boyfriend of one of her girlfriends. This soldier was himself a passenger in an automobile occupied by three of his male friends, all of whom were members of the armed forces of the United States stationed in the Federal Republic of Germany.[1] The girl, who was of chaste character, was not driven directly to her home as she had anticipated. Instead, she was taken to a wooded area near Neu Ulm where she was repeatedly gang raped and forcibly sodomized by the four servicemen.[2] The evidence further established that appellant was a leader of this group and that he had exercised substantial influence over the acts and activities of the others.

Contrary to his pleas, appellant was convicted by a general court-martial composed of officer and enlisted members of rape and forcible sodomy in violation of Articles 120 and 125, Uniform Code of Military Justice, 10 U.S.C. §§ 920 and 925 (1982 & Supp. II 1984) [hereinafter cited as UCMJ]. He was sentenced to a dishonorable discharge, confinement for twenty years, and forfeiture of all pay and allowances. The convening authority approved the sentence. Subsequent to review by a panel of this court, the case was referred to the court as a whole for further appellate review pursuant to Article 66(a), UCMJ, 10 U.S.C. § 866(a). *United States v. Williams*, 23 M.J. 525 (A.C.M.R.1986), *vacated and reh'g en banc ordered*, CM 446852 (A.C.M.R. 17 Sept. 1986) (order of court en banc) (unpub.).[3]

The principal appellate issue before the court en banc is whether the presentencing argument of the trial counsel, to which there was neither objection nor comment by the parties at trial, was legally erroneous and, if so, whether a rehearing on sentence or some other type of sentence relief is required. We conclude that (1) even if the remarks are construed as im-

1. The invitor was a Specialist Four Douglas. The driver of the automobile was an Air Force enlisted man (E–4) named Greene. The other two male passengers were the accused and a Specialist Four Biggs.

2. The underlying facts are set forth in greater detail in the panel decision of this case. Briefly stated, the evidence established that the young girl was gang raped and forcibly penetrated innumerable times; that the four perpetrators alternated sexual positions often during the thirty to forty-five minute incident; and that, among other things, she was forced to assume a dog-like stance so that the servicemen, in teams of two, could criminally abuse her simulta-

neously. See *United States v. Williams*, 23 M.J. 525, 528 (A.C.M.R.1986) (Watkins, S.J., dissenting).

3. The panel unanimously affirmed the findings of guilty but split as to whether any error resulting from the presentencing argument of the trial counsel was waived and whether a constitutional rights violation occurred. A majority found that appellant's due process rights were adversely affected, that the waiver doctrine should not be invoked, and that a rehearing on sentence was required. *United States v. Williams*, 23 M.J. at 527–28.

proper, any error was waived; (2) the matter was not so egregious as to rise to the level of plain error or a violation of due process of law; and (3) the sentence, as well as the findings of guilty, should be affirmed.

## I. *The Matters Before the Court-Martial on Sentencing*

The relevant facts concerning the presentencing portion of the trial are not in dispute. Following announcement of the findings of guilty, the trial counsel introduced evidence pertaining to the accused's service record and, in aggravation, a record of prior nonjudicial punishment pursuant to Article 15, UCMJ. Neither side called witnesses, and no additional evidence was introduced for the consideration of the members.[4] The argument of the trial counsel on sentence preceded that of the defense counsel. The former argument, which is central to the principal appellate issue in this case, is set out in its entirety in the Appendix to this opinion. The trial defense counsel neither objected to the prosecutor's argument nor requested curative relief. The presentencing argument of the defense counsel emphasized that this was the accused's first conviction, that life imprisonment was appropriate only for recidivists or where the victim had been maimed, and that such extreme punishment was neither warranted nor reasonable in this case.

The judge's presentencing instructions to the members included, *inter alia*, an explanatory reference to several of the purposes underlying the sentencing process, to include: punishment per se, general deter-

rence, rehabilitation, preservation of order, and specific deterrence. The defense counsel was afforded an opportunity to request additional instructions but declined to do so.

## II. *The Propriety of Trial Counsel's Argument on Sentence*

It is well established that a prosecutor is at liberty to strike hard, but not foul, blows. *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935). The line separating acceptable from improper advocacy is not easily drawn; there is often a gray zone. *United States v. Young*, 470 U.S. 1, 105 S.Ct. 1038, 1042, 84 L.Ed.2d 1 (1985). In analyzing an issue of this nature, each case necessarily turns on its own facts. *United States v. Abbott*, 37 C.M.R. 405, 408 (C.M.A.1967); *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 240, 60 S.Ct. 811, 852, 84 L.Ed. 1129 (1940).

In a narrower context, at least two military cases have noted that "to ask a court member to place himself in position of a near relative wronged by the accused is to invite him to cast aside the objective impartiality demanded of him as a court member and judge the issue from the perspective of personal interest." *United States v. Shamberger*, 1 M.J. 377, 379 (C.M.A.1976); *United States v. Wood*, 40 C.M.R. 3, 8 (C.M.A.1969).

■ That is not to say, however, that argument with emotional overtones is necessarily improper, or that reasonable appeals to a jury's sense of outrage at the horror of a defendant's crime must be proscribed. *See Tucker v. Zant*, 724 F.2d 882,

---

**4.** In his prefindings instructions to the members, the trial judge emphasized that the accused was entitled to rely upon the presumption of innocence, that he was under no duty to present evidence in his defense, that he had an absolute right to remain silent and that, if he did not testify, that fact would have to be disregarded by the members and could not be the basis for any adverse inference. The judge also instructed, properly, that argument by counsel does not constitute evidence. During an out-of-court session while the members were deliberating on findings, the military judge advised the accused at length regarding his presentencing allocution

rights and his right to present further evidence. Following the announcement of findings, at another out-of-court session, the judge verified on the record the accused's election regarding the presentation of defense evidence on sentence:

> MJ: Now, your attorney has told me that you don't desire to present any evidence at this stage of the trial, and is that true that you don't want your attorney to make a statement for you? He'll make an argument for you on sentence, but you don't want to present anything at all, is that true?
> ACCUSED: Yes, sir.

Record at 217.

887 (11th Cir.1984), *aff'd sub nom. Tucker v. Kemp,* 762 F.2d 1480 (11th Cir.1985) (en banc), *cert. granted and remanded,* —— U.S. ——, 106 S.Ct. 517, 88 L.Ed.2d 452 (1985), *aff'd,* 802 F.2d 1293 (11th Cir.1986) (en banc). Argument need not be sterile or anemic; blunt and emphatic language is essential to effective advocacy in most cases. *United States v. Turner,* 17 M.J. 997, 999 (A.C.M.R.), *petition denied,* 19 M.J. 17 (C.M.A.1984) (construing *United States v. Doctor,* 21 C.M.R. 252, 259 (C.M. A.1956)). Where argument is directly related to a legitimate concern on sentencing, the fact that it evokes strong emotions does not independently indict it as improper. *Brooks v. Kemp,* 762 F.2d 1383, 1405 (11th Cir.1985) (en banc), *vacated and remanded on other grounds,* —— U.S. ——, 106 S.Ct. 3325, 92 L.Ed.2d 732 (1986); *Evans v. Thigpen,* 631 F.Supp. 274, 290 n. 12 (S.D.Miss.1986).

Turning to the particular argument at issue here, the trial counsel called upon the members, *as representatives of society,* to determine what criminal sanction would be appropriate for the accused, Private Williams. In apparent reference to the specific deterrence theory of sentencing, the government counsel, on two separate occasions, posed rhetorical questions as to how long Private Williams should be incarcerated before he is again permitted to walk among "your daughters," "our daughters." Record at 220, 222; Appendix.

▮ This argument is distinguishable from those which were deemed improper in *United States v. Wood,* 40 C.M.R. 3,[5] and *United States v. Shamberger,* 1 M.J. 377.

In *Wood,* the accused, a scoutmaster of a boy scout troop, was convicted of taking indecent liberties with three of the boys under his supervision, all of whom were under sixteen years of age. In his presentencing argument, the trial counsel appealed to the members of the court-martial to "administer justice" from the perspective that their own sons had been sexually victimized by the defendant. He furthered this result by employing phrases such as "your own sons," "your son," and "your child." *United States v. Wood,* 40 C.M.R. at 8. Similarly, the trial counsel in *Shamberger* asked the panel members to picture themselves in the position of the rape victim's husband, forcibly pinned to the ground, while a few feet away his wife was "having her clothes ripped off her and then being raped, once, twice, three times, four times, five times...." *United States v. Shamberger,* 1 M.J. at 379. In both *Wood* and *Shamberger,* the members were encouraged to mentally substitute a near relative *for the actual victim* and to view the evidence before the court-martial in that light. The practical effect was to decrease the likelihood that the evidence would be weighed in a fair and objective manner. In contrast, there was no such appeal in this case.[6] The challenged remarks of the trial counsel related directly to the legitimate sentencing concern of whether Private Williams could be expected to refrain from committing the same or similar crimes of violence in the future.

This latter point of law was effectively, and we think properly, treated by the U.S. Court of Appeals for the Eleventh Circuit in the recent case of *Brooks v. Kemp,* 762 F.2d 1383 (11th Cir.1985) (en banc), *vacated*

---

**5.** Notwithstanding the "improprieties" in the presentencing argument of the trial counsel, a majority of the court rejected appellant's claim of due-process error and affirmed the sentence. The holding was couched in the following language: "Evaluating trial counsel's argument as a whole, and considering it in light of the entire record, we are satisfied that the improprieties in the argument were not prejudicial to the accused." *United States v. Wood,* 40 C.M.R. at 9.

**6.** Had the trial counsel gone further and called upon the members to visualize their *own daugh-*

*ters* being transported to a secluded location and then gang raped and forcibly sodomized by the accused and three of his friends, the argument would have been clearly erroneous. Although those particular facts are not before the court, we deem it appropriate to admonish counsel to be mindful of the previously quoted language from these cases to the effect that the members must perform their judicial duties in an objective and impartial manner, rather than from the perspective of personal interest.

*and remanded on other grounds,* —— U.S. ——, 106 S.Ct. 3325, 92 L.Ed.2d 732 (1986). Following the accused's conviction of murder, the prosecutor argued for the death penalty and focused on the future dangerousness of the defendant. He suggested that Brooks might kill a guard or a fellow prisoner. The prosecutor even noted the possibility that Brooks might escape, and asked "[w]hose daughter will it be next time?" *Brooks v. Kemp,* 762 F.2d at 1411. The court determined that this portion of the prosecutor's argument was not erroneous:

> Although these arguments were dramatic, they were directly relevant to the consideration of whether Brooks would remain a threat to society. [Footnote omitted.] Our discussion ... demonstrates that such consideration is a proper element in the sentencing jury's decision. [Citation omitted.] A legitimate future dangerousness argument is not rendered improper merely because the prosecutor refers to possible victims. In this case, the arguments about Brooks' future dangerousness were appropriate inferences from the record before the jury.

*Brooks v. Kemp,* 762 F.2d at 1411–12. *See also Jurek v. Texas,* 428 U.S. 262, 269, 272–73, 96 S.Ct. 2950, 2955, 2956–57, 49 L.Ed.2d 929 (1976) (approving a Texas capital sentencing statute which required the jury to find, before imposing a death sentence, that there was a probability that the defendant would commit criminal acts of violence constituting a continuing threat to society); *California v. Ramos,* 463 U.S. 992, 1002 n. 16, 103 S.Ct. 3446, 3454 n. 16, 77 L.Ed.2d 1171 (1983) (not error to instruct in capital case that Governor could commute a sentence of life without parole; mention of commutation merely invited jury to assess whether the probable future behavior of defendant made it undesirable that he be returned to society).

In *United States v. Hutchinson,* 15 M.J. 1056, 1066 (N.M.C.M.R.1983), *sentence rev'd on other grounds,* 18 M.J. 281 (C.M.A.1984), *cert. denied,* 469 U.S. 981, 105 S.Ct. 384, 83 L.Ed.2d 319 (1984), the trial counsel argued in a capital homicide case

that members of the victim's family had "lost a son and a brother" ... "at the barrel of a shotgun," ... and that "[t]hose of us who are fathers can sympathize perhaps with that." Finding the concluding statement of the argument improper but neither inflammatory nor prejudicial, the court distinguished *Shamberger* (where the members were asked to picture their wives being repeatedly raped) on the basis that the trial counsel had not made a direct plea to the members to imagine one of their own relatives as the victim. In comparison with the argument of counsel in *Shamberger,* the remarks were determined to be "bland and pale" and of "minimal impact on the members." *United States v. Hutchinson,* 15 M.J. at 1066–67. The court concluded that the trial judge did not err in failing to give a cautionary instruction, and that sentencing relief was not warranted. *Id.* at 1067; *cf. United States v. McPhaul,* 22 M.J. 808, 814–15 (A.C.M.R.1986), *petition denied,* 23 M.J. 266, (C.M.A.1986) (presentencing argument of trial counsel, which referred to defendant as a "slavering animal" and "degenerate scum," was grounded on evidence of record and reasonable inferences drawn therefrom and was not improper; trial counsel's use of rhetorical question, concerning whether the defendant—as depicted in prosecution's photographic evidence—was smiling at certain court members, did not amount to an appeal to the members to adjudge a sentence based upon personal considerations).

■ In the context of the facts and circumstances of this case, we hold that trial counsel's presentencing argument was not so clearly erroneous as to oblige the trial judge, *sua sponte,* to give a curative instruction. Several factors tend to establish that there was no error at all in this instance. There is no question, for example, that the argument of the trial counsel was fairly predicated on the evidence properly before the members. Moreover, an aggressive, hard-hitting prosecution argument was virtually inevitable in light of the competent evidence detailing the dehumanizing, if not barbaric, manner in which the

young female victim was physically abused and forcibly penetrated, time after time. *See United States v. McPhaul,* 22 M.J. at 814–15. Finally, the argument of the trial counsel was directly related to a legitimate sentencing consideration: namely, specific deterrence. As has been seen, a future dangerousness argument is not rendered improper merely because possible victims are mentioned. *Brooks v. Kemp,* 762 F.2d at 1412. Nevertheless, if one ignores the rhetorical manner and specific-deterrence context in which the term "daughters" was used, it is possible to construe the pertinent remarks of trial counsel as relating to near relatives of the members of the court-martial, rather than—as explicitly indicated—to female offspring of society at large.[7] Accordingly, *ex abundanti cautela,* we shall proceed to analyze the legal effect of these remarks as if they were violative of the principle of *Wood,* 40 C.M.R. 3, and *Shamberger,* 1 M.J. 377.

### III. *Applicability of the Waiver Doctrine*

■ Assuming, *arguendo,* that trial counsel's presentencing argument was improper, it is still necessary to determine whether the error was preserved for appellate review and, if so, whether, in the context of the entire record, sentence relief is warranted.[8] In this regard, the President has prescribed: "Failure to object to improper argument before the military judge begins to instruct the members on sentencing shall constitute waiver of the objection." Manual for Courts-Martial, United States, 1984, Rule for Courts-Martial [hereinafter cited as R.C.M.] 1001(g). This waiver provision is to be strictly enforced. *United States v. McPhaul,* 22 M.J. at 813–14.[9] On the subject of waiver, the remarks of Chief Judge Quinn more than seventeen years ago are still apropos and instructive:

The accused contends he was prejudiced as to the sentence by improper argument of trial counsel.

Before considering the specifics of the allegation of error, it is appropriate to note that no objection was made to any of the remarks now viewed as constituting, in the aggregate, a denial of due process. We are not inclined to penalize an accused for flagrant oversights or neglects of his counsel at trial [citation omitted], but defense has some obligation to object to argument regarded as an appeal to passion or deemed unsupported by the evidence. Timely objection can result in timely correction of improper argument, and appropriate instructions can, in many instances, purge all possibility of harm. [Citation omitted.] The absence of objection tends to indicate that the defense did not regard the

---

7. We find this to be a strained interpretation. Near the end of his presentencing argument, the trial counsel made it clear, again in rhetorical language, that his remarks were focused upon specific deterrence as it related to the protection of nineteen year-old girls within society in general. His exact words were:

That's the man that you're going to sentence, and for these reasons, for the total lack of self-control, these reasons are why you must insure for the good of society—not just the Army; the Army is huge, but for the good of society—how long do you want it to be before this man walks among 19 year old girls again.

Record at 222; Appendix. In view of the fact that the *actual victim* was nineteen years of age at the time of trial, the notion that the trial counsel was improperly referring to *near relatives of the voting members of the court-martial* strikes us as tenuous at best.

8. Improper argument by trial counsel during the presentencing portion of a court-martial does not necessarily require corrective action by an appellate court. *United States v. Gerlach,* 37 C.M.R. 3, 5 (C.M.A.1966); *United States v. Carpenter,* 29 C.M.R. 234, 236 (C.M.A.1960); *see also United States v. Neal,* 31 C.M.R. 309, 311 (C.M.A.1962) (even if presentencing remarks of trial counsel exceeded fair comment, they did not influence the court-martial to accused's prejudice).

9. The R.C.M. 1001(g) waiver provision was first promulgated by the President in the Manual for Courts-Martial of 1984. In adopting this rule, the President was clearly on notice of existing military judicial precedent, as reflected in opinions such as *United States v. Wood,* 40 C.M.R. 3 (C.M.A.1969) and *United States v. Shamberger,* 1 M.J. 377 (C.M.A.1976). *See generally* Manual for Courts-Martial, United States, 1984, Analysis of R.C.M. 919(c) and 1001(g), App. 21, A21–59 and A21–62.

prosecutor's argument as egregiously improper and is a persuasive inducement to an appellate court to evaluate the prosecutor's argument in the same light as the defense probably considered it at the trial. [Citations omitted.]

*United States v. Wood,* 40 C.M.R. at 5; *see also United States v. Pinkney,* 48 C.M.R. 219, 222 (C.M.A.1974); *United States v. Doctor,* 21 C.M.R. 252, 260–61 (C.M.A. 1956).

■ There was, in fact, no objection by the trial defense counsel on 27 December 1984 when this case was tried. Nor was there any objection when, subsequent to the court-martial, the accused and his defense counsel completed the appellate rights form and noted for the benefit of the convening authority and other appellate reviewing officials four specific trial "errors" or "grounds for relief," none of which was in any way related to the presentencing argument of the trial counsel. Nor was this matter mentioned by the trial defense counsel on 5 February 1985 when he submitted a written "Goode [or R.C.M. 1105] Response"[10] setting forth two separate bases for sentence relief, neither of which was related to the instant appellate issue. Consequently, we hold that any error resulting from the presentencing argument of the trial counsel was waived.

## IV. *Overall Fairness of the Judicial Proceedings*

■ There remains the question of whether, notwithstanding the lack of objection at trial to trial counsel's presentencing argument, the matter was so egregious as to constitute plain error or to deny the appellant a fair trial. Whereas we entertain no doubt that, on proper facts, a plain-error or due-process exception to R.C.M.

1001(g) can arise, this, we find, is not such a case. In practical terms, the scope of the plain error doctrine is quite narrow. *See generally United States v. Fisher,* 21 M.J. 327, 328–29 (C.M.A.1986) (the plain error doctrine is invoked to rectify those errors that seriously affect the fairness, integrity or public reputation of judicial proceedings; as a consequence, it is to be used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result); *United States v. Webel,* 16 M.J. 64, 66 (C.M.A.1983) (plain error is not the equivalent of obvious error; rather, it is only found in exceptional circumstances in order to preserve the integrity and reputation of the judicial process or to prevent a miscarriage of justice); *United States v. Lips,* 22 M.J. 679, 683 (A.F.C.M.R.1986) (issue of improper argument waived on appeal by lack of objection at trial; no basis exists for invoking the plain error doctrine); *accord United States v. Frady,* 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1592 n. 14, 71 L.Ed.2d 816 (1982); *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936). *A fortiori,* the presentencing argument in issue in the present case did not result in constitutional error. *Cf. Darden v. Wainwright,* —— U.S. ——, 106 S.Ct. 2464, 2471–472, 91 L.Ed.2d 144 (1986) (closing argument of prosecution on findings in capital case, which characterized the perpetrator of the crimes as an "animal" and contained counsel's personal opinion of the strength of the state's evidence, was improper and is deserving of the condemnation it has received from every court to review it, but the argument did not manipulate or misstate the evidence and did not deprive appellant of a fair trial);[11] *Donnelly v. DeChristoforo,* 416 U.S. 637, 645, 647–48, 94 S.Ct. 1868,

---

**10.** In *United States v. Goode,* 1 M.J. 3 (C.M.A. 1975), the Court of Military Appeals formalized a procedure whereby the trial defense counsel would be afforded an opportunity to correct or challenge matters contained in the post-trial review of the staff judge advocate which were deemed erroneous, inadequate or misleading, or on which he otherwise wished to comment. Since the promulgation of the 1984 Manual for Courts-Martial, R.C.M. 1105 (which is captioned

"matters submitted by the accused") has served a corresponding, albeit slightly broader, function.

**11.** The majority in *Darden v. Wainwright* agreed with the District Court below that "Darden's trial was not perfect—few are—but neither was it fundamentally unfair." 106 S.Ct. at 2473 (citation omitted).

1872, 1873–74, 40 L.Ed.2d 431 (1974) (pre-findings argument of prosecutor in first-degree murder case was improper, but Court of Appeals erred in failing to make the distinction between ordinary trial error and egregious misconduct amounting to a denial of constitutional due process; the argument simply did not make appellant's trial so fundamentally unfair as to deny him due process).

▮▮▮ The adjudged sentence in this case, while severe, is in no sense disproportionate to the serious offenses of which the appellant was properly convicted. The evidence overwhelmingly established both appellant's guilt and his leadership role in the commission of violent sex crimes. Indeed, it seems clear that appellant was in serious jeopardy of being sentenced to prison for a significantly longer term of years, if not for life.[12] As a mitigating factor, his prior service record was of little or no assistance to the defense.[13] After carefully considering the argument of trial counsel, all of the other relevant presentencing factors and the entire record, we are satisfied that appellant was not unfairly prejudiced as to sentence and that his due-process rights were not adversely affected. *See* UCMJ, art. 59(a), 10 U.S.C. § 859(a).

## V. Conclusion

We conclude that the assignment of error relating to the presentencing argument of the trial counsel is without merit; that in keeping with the general principle of decisional law and the plain language of R.C.M. 1001(g), any error in this regard was waived; that the matter does not rise to the level of plain error or a violation of due process; that the proceedings were not fundamentally unfair; and that the remaining assignments of error, including those raised by the appellant personally, are without merit.

Upon reconsideration of this case by the court sitting as a whole, the findings of guilty and the sentence are affirmed.

Chief Judge O'ROARK, Senior Judges DeFORD, RABY and PAULEY, and Judges De GIULIO, WILLIAMS, CARMICHAEL, KENNETT, RICHARDSON and ROBBLEE concur.

FELDER, Senior Judge, concurring in the result:

I agree that the trial counsel's argument was not plain error and the failure to object constitutes waiver. However, I must disassociate myself from any implication of the majority that the remarks of the trial counsel were proper. The so-called "Golden Rule" argument is traditionally recognized as improper because it invites the court members to depart from neutrality and decide the case on the basis of personal interest and bias rather than on the evidence.[1] *See e.g. United States v. Wood*, 40 C.M.R. 3 (C.M.A.1969); *United States v. Begley*, 38 C.M.R. 488 (A.B.R.1967); *Dyer v. State*, 154 Ga.App. 281, 268 S.E.2d 758 (1980); *Lucas v. State*, 335 So.2d 566 (Fla.App. 1976); *Adams v. State*, 192 So.2d 762 (Fla. 1966). *See also Ivy v. Security Barge Lines, Inc.*, 585 F.2d 732 (5th Cir.1978), *rev'd on other grounds*, 606 F.2d 524 (5th Cir.1979) (en banc), *cert. denied*, 446 U.S. 956, 100 S.Ct. 2927, 64 L.Ed.2d 815 (1980).

---

**12.** Official military records on file in the office of the clerk of this court indicate that a co-accused, who was separately tried and convicted by general court-martial of charges virtually identical to those upon which this appellant was arraigned, was sentenced to a dishonorable discharge, confinement for *thirty* years, forfeiture of all pay and allowances, and reduction to the grade of E–1. *United States v. Douglas*, CM 446985 (A.C.M.R. 29 Jan. 1986) (unpub.), *petition denied*, 22 M.J. 248 (C.M.A.1986). We find this information to be of some probative value in determining whether the appellant was, in fact, prejudiced by trial counsel's presentencing argument. *See generally United States v. Ballard*, 20 M.J. 282, 286 (C.M.A.1985); *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A.1982).

**13.** Prosecution evidence on sentencing included a record of prior nonjudicial punishment (DA Form 2627) for wrongful possession of marijuana in September 1983.

**1.** The Golden Rule argument urges the jurors to place themselves or their families in the victim's situation and decide the case from that perspective. Black's Law Dictionary 623 (5th ed. 1979).

In my view, it is equally improper to invite the court members to substitute their relatives for victims of past or future crimes.

An argument on future dangerousness may, under proper facts, suggest potential harm to others, but the suggestion may not include possible injury to the relatives of court members as was done in this case. To be legitimate, the future dangerousness argument must be impersonal. There is a fundamental distinction between a prosecutor asking the rhetorical question "Whose daughter will it be next time?" and his beseeching the court members to protect their daughters and his daughters from future criminal conduct. In the first instance, the term "daughter" is permissibly used in the generic sense and in the latter it is incorrectly used to provoke personal interest. The risk is simply too great that such an invitation will devour the neutrality that is essential to a proper sentence determination.

The argument in this case is similar in pertinent part to the one condemned in *Wood,* 40 C.M.R. at 8, in which the court held that "to ask a court member to place himself in the position of a near relative wronged by the accused is to invite him to cast aside the objective impartiality demanded of him." Throughout his argument, the trial counsel in *Wood* also reminded the court members to fulfill their "responsibility to your society or the Air Force," and implored them to act "[a]s members of society," and "as the stalwarts of society." 40 C.M.R. at 10. Yet, reminding the court members of their judicial capacity did not neutralize the venom of the objectionable remarks. Similarly, an improper argument that appeals to personal prejudice is not legitimized because it includes a request for protection of a particular class of persons such as "all our children" as was done in *Wood* or all "19 year old girls" as was requested in this case. *Id.*

Furthermore, I believe whenever the future harm argument is made, the court members should be instructed on how to evaluate the argument so as to minimize the risk of punishing an accused for a crime not committed. The court recognized in *Brooks v. Kemp,* 762 F.2d 1383, 1398 n. 21 (11th Cir.1985) (en banc), *vacated and remanded on other grounds,* —— U.S. ——, 106 S.Ct. 3325, 92 L.Ed.2d 723 (1986), that no such instruction was given. The dissenting opinion in *Wood* cautions that an accused is to be tried for crimes committed, not for a course of future conduct.[2] 40 C.M.R. at 12.

While the argument in this case was not inflammatory like the one criticized in *United States v. Shamberger,* 1 M.J. 377, 379 (C.M.A.1976), it is a non sequitur to imply there was no error. In *United States v. Hutchinson,* 15 M.J. 1056 (N.M.C. M.R.1983), *sentence rev'd on other grounds,* 18 M.J. 281 (C.M.A.1984), *cert. denied,* 469 U.S. 981, 105 S.Ct. 384, 83 L.Ed.2d 319 (1984), while the court ruled that the argument of the trial counsel was not inflammatory, it held that it was improper for trial counsel to appeal to the sympathy of the court members as fathers and to invoke trial counsel's compassion as a father.

The majority sanctions an argument that, in my opinion, appeals to the personal interest of court members. I am troubled that as a consequence, this court has placed its imprimatur on similar arguments in judge alone cases where the personal appeal is more defined. Therefore, I am deeply concerned that the principal opinion will lead to the eventual annihilation of the long-standing rule in *Wood.*

However, I join in affirming the findings of guilty and the sentence.

SMITH, Judge, with whom Judge LYMBURNER concurs, dissenting:

Earlier in the history of this case, in *United States v. Williams,* 23 M.J. 525

---

2. In the future, trial defense counsel would be well-advised, in appropriate cases, to consider requesting an instruction from the military judge that advises court members not to adjudge a sentence out of fear of potential danger to themselves or their loved ones and not to punish the accused for uncommitted crimes.

(A.C.M.R.1986), *vacated and reh'g en banc ordered,* (A.C.M.R. 17 Sept. 1986) (order of court en banc) (unpub.), we found (1) that the trial counsel's argument on sentencing was improper, (2) that the military judge had a *sua sponte* duty to interrupt and take corrective action, (3) that the improper argument error was not waived by trial defense counsel's failure to object, and (4) that appellant was prejudiced by the improper argument. After careful reconsideration, we adhere to our original findings and respectfully dissent.

## Improper Argument

Judicial precedent in the court-martial system convinces us that military courts have never labeled, as proper, argument directing fact finders or sentencing authorities to place themselves in the position of a near relative of a victim. It is axiomatic that the sixth amendment of the U.S. Constitution requires that an accused be tried by impartial jurors and prohibits close family members of the victim (or those *in loco parentis*) from sitting in judgment of those accused, or convicted, of harming their relatives. Case law and professional standards uniformly proscribe argument that, by implication or otherwise, instructs jurors to disregard their duty to be impartial, unprejudiced, disinterested, equitable and just. Trial counsel in this case, with considerable emphasis, directed the members to place themselves in the position of parent and promote, through sentencing, a personal interest—protecting their daughters, present or future. Trial counsel further requested personal consideration from the members in protecting his daughters:

> *In coming to your decision now, you must determine how long it will be until you all, representing society, want this rapist walking among your daughters.* This man, of course, had forcible sodomy. *How long do you think you want him walking among our daughters?"*

. . . .

*How many days do you want to go by before you let this man out among your daughters—our daughters.*

Record at 219–220, 222 (emphasis added). The argument was improper.

## Military Judge's Duty

A military judge has a *sua sponte* duty to ensure that an accused receives a sentence which is not the product of an improper inflammatory argument. *United States v. Shamberger,* 1 M.J. 377 (C.M.A. 1976). Depending upon the degree of erroneous comment, the trial judge may be required to declare a mistrial, interrupt the argument, or give curative instructions. In this case, the trial judge did nothing.

## Waiver and Prejudice

As we stated in our original opinion, it is the odious nature of these offenses and the high probability of the members' emotional response to trial counsel's improper argument, within that context, that convinces us that appellant's due process rights were adversely affected. *United States v. Williams,* 23 M.J. at 527. The facts are well described in the lead opinion and it is fair to say that the sentence imposed is not excessive. The majority holds that even if the argument was improper, the Manual for Courts-Martial mandates waiver. The Supreme Court opinions, promulgated standards of professional responsibility, and military case law, cited in our original *Williams* opinion, and the facts and circumstances of this case, convince us that the error was not waived and requires corrective action.

We believe that the majority's opinion reflects, and is essentially based upon, the conclusion that appellant's *sentence* is just. In our view, an appellate judge's independent conclusion or personal view of a just result under a particular set of facts is an inappropriate appellate measure of the effect of improper sentencing argument. Such a standard can justify the affirmance of sentences regardless of the nature or degree of unfairness or error. The proper inquiry is whether the error "so infected

the *trial* with unfairness as to make the resulting [sentence] a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974) (emphasis added).

We have concluded that the court members' deliberations on sentencing were unfairly compromised by the trial counsel's improper argument. In reviewing the record we note the absence of mitigating factors which might have balanced out the prejudicial impact to this appellant. Not only did the military judge fail to correct the argument error committed at pages 219–220 of the record of trial, but following the improper argument, during his instructions on sentencing (after outlining factors to be considered) stated: "You may consider any other factor that you've heard in court today which is properly before you that I haven't commented on." Record at 227. During sentencing instructions the military judge *did not* inform the members that the arguments were not evidence. The trial counsel's improper argument was *not* in response to or invited by any comment made by the defense counsel. The defense counsel *did not* in closing argument in any way rebut, turn the argument against the government, or express disapproval of an argument designed to divert the members from impartiality. *Cf. Darden v. Wainwright*, — U.S. —, 106 S.Ct. 2464, 2472–473, 91 L.Ed.2d 144 (1986). In short, the improper argument was not challenged by the defense counsel or the military judge within a context where both of them, as well as the trial counsel, had a duty to protect the appellant's right to a *fair trial.* As an additional matter, we note that appellant did not testify or present evidence during the sentencing portion of the trial. *No* instruction was requested or given to the members that no adverse inference would be drawn from appellant's failure to testify.

In this case not only were the members told by the trial counsel to consider it their duty as court members to protect their daughters, but the improper argument was reinforced inadvertently by the military judge's instructions on sentencing. The ar-gument was not defused or lost within the context of appellant's presentencing presentation—there was none. Essentially, appellant was sentenced based upon the facts of the crime and the sentencing arguments. Implicit in appellant's request for trial by members was an expectation that the members would be impartial; trial counsel's improper argument, under the facts and circumstances of this case, undermines our confidence that he was sentenced by such court members.

The nature of the error and the state of the record convince us that reassessment of the sentence would be inappropriate. Accordingly, we would set aside the sentence and order a rehearing by the same or a different convening authority.

## APPENDIX

TC: Members of the court, my last words to you 40 minutes ago was that the man who sits 15 feet from you is a rapist. You obviously agreed with the government's contention. Now, your mission is to determine what should be done with this rapist. Now, in determining this we would ask each of you, representing the Army, representing society, to determine what is appropriate. What is appropriate for Private Williams? What will it take to impress on Private Williams that [sic] he did was wrong—was terribly wrong? You also must consider what is necessary for society. In coming to your decision now, you must determine how long it will be until you all, representing society, want this rapist walking among your daughters. This man, of course, had forcible sodomy. How long do you think until you want him walking among our daughters? Now, who is this man? A good soldier? No, he's done drugs, got a 15. One stupid mistake? That one is not going to work. He knew what he was doing. He thought he could get away with it; he thought he could get over, but he didn't. Who knows him? You've read the statement given by Douglas. Just to ponder a few thoughts here, in 2 days after [sic]. Williams asked me to

return to the car and ask the girl if she would have sex with them. Williams told me I don't know how to do it right and went to the car. Williams and Biggs were going to force the girl to have sex. Williams told her if she did not suck his dick, she was not going to be taken home. Williams said he was in charge, and we would all do what he said. That's the man. That's the man that you've got to determine an appropriate sentence for. The judge asked you all this morning, first thing; he said, I'm advising you that these offenses carry a life penalty. Does that frighten you? Does that make any of you feel at ease [sic] about being a member here today? You all said it didn't. Why would there be a crime that you could put a man in jail for his life? What kind of crime would have to be shown to you to justify that? A crime that shows a total disregard for human values. This woman was treated like a piece of meat, was passed from one man to another, was violated in every orifice on her body. That's the man. That's the crime. This is one of the worse [sic] crimes that can be committed. When you're thinking about appropriate sentence, think of Private Williams as he sits here all quiet before you. Does he look like an animal? No. Has he behaved himself today? Yes, he looks like a pretty nice guy. When you're thinking about appropriate sentence, think of that Williams. Think of Williams on the night when he and his friends gang raped Ms. Dilg. Think of the night when this Williams who was—now he's so quiet and calm, was directing the show. When this Williams called off his friend who couldn't get the girl, who couldn't persuade the girl; this Williams who pulled off her clothes, this Williams who raped and committed forcible sodomy on that young woman. Think about that young woman, not poor Private Williams as he sits here before you. Think of the agony that this woman went through in determining how long it'll be until any of you is willing to take the chance on imposing that agony on someone else. Think of the shame that this woman feels. Think of the scars on this woman. I'm not talking about her vaginal bleeding. There are no scars to her body, but this woman who, for the rest of her life, will have this scar on her mind where it can't be cured. No plastic surgery can be done on a scar like this. This is something this woman will live with everyday of her life. Everyday of her life she will suffer from this man. How many days do you want to go by before you let this man out among your daughters—our daughters. This is the man; these are the crimes that warrant life imprisonment. This man cannot be allowed to mingled [sic] among good soldiers or innocent women. He has no control. He saw what he wanted, and he took it. That's the man that you're going to sentence, and for these reasons, for the total lack of self-control, these reasons are why you must insure for the good of society— not just the Army; the Army is huge, but for the good of society—how long do you want it to be before this man walks among 19 year old girls again. He should never be given this opportunity. Is the government asking for a pound of flesh? Is the government asking that this man be dealt with unreasonably? What kind of behavior did this man show? Was he reasonable with the way that he dealt with someone in his control? Show him the same mercy that he showed Ms. Dilg. What mercy did he show? Douglas, again, because he told you eventually it got to the point where even Douglas said no more, leave her alone. What about this man? I want more; she's sitting between us. We're going to get some more on the way home. This man wasn't satisfied. That's the mercy he showed his victim. That's how much mercy he should be showed [sic] today.

TC: Thank you, members.

Record at 219–222.