**UNITED STATES, Appellee,**

v.

**CW3 Kennith L. JOHNSON, 300–46–0163, United States Army, Appellant.**

**CM 449177.**

U.S. Army Court of Military Review.

30 June 1987.

For Appellant: Lieutenant Colonel Joel D. Miller, JAGC, Major Marion E. Winter, JAGC, Captain Ralph L. Gonzalez, JAGC (on brief).

For Appellee: Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Captain Patrick D. O'Hare, JAGC, Captain Erik M. Stumpfel, JAGC (on brief).

Before DeFORD, WILLIAMS, and KENNETT, Appellate Military Judges.

## OPINION OF THE COURT

PER CURIAM: *

Tried by a general court-martial with members, appellant was convicted, pursuant to his pleas, of signing a false official document, larceny (seven specifications), and uttering forged checks (seven specifications) in violation of Articles 107, 121, and 123, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 907, 921,

---

\* Judge Herbert D. Williams III took final action in this case prior to his reassignment.

and 923 (1982) respectively. He was sentenced to a dishonorable discharge, confinement for eight years, and forfeiture of all pay and allowances. The convening authority, pursuant to a pretrial agreement, reduced the confinement portion of the sentence to three years and six months, but otherwise approved the sentence.

Appellant alleges two prejudicial errors were committed during his trial. We find no prejudicial error was committed and affirm appellant's conviction.

## I

Appellant alleges the military judge erred in ruling the prosecution had satisfied the speedy trial requirements of Manual for Courts-Martial, United States, 1984, Rule for Courts-Martial [hereinafter R.C.M.] 707.[1] The thrust of appellant's argument is that his commander placed three restrictions upon his liberty, any one of which was sufficient to trigger the speedy trial requirements, and that the prosecution is estopped from asserting it is not now accountable for 140 days to which it agreed in a Stipulation of Fact.

The facts upon which this allegation is based are that while appellant was under investigation, but prior to preferral of charges, he was granted, on 14 December 1985, an approved leave to return to the United States. On 16 December 1985, his commander cancelled the leave and left instructions for appellant to return to his unit. Further, on 18 December 1985, appellant's acting commander instructed appellant that he was not to leave the Frankfurt area without permission. Finally, on 20 December 1985, appellant was ordered not to go to his former place of duty, the questioned documents section of the U.S. Army Criminal Investigation Command Laboratory in Frankfurt, West Germany.

The parties entered into a stipulation of fact which, in addition to the facts set forth above, provided, in part, that the charges were preferred on 24 February 1986; and that appellant was responsible for two periods of delay—13 to 27 March 1986 (15 days) during the UCMJ art. 32(b) investigation, and 22 to 29 May 1986 (8 days). The stipulation further contains this statement: "The Government agrees it is accountable for 140 days from 16 December 1985 until 30 May 1986 the date of trial."

Captain Brent, appellant's executive officer, testified that, while serving as acting commander, he had advised appellant on 18 December 1985 not to leave the Frankfurt area unless he was given permission. He stated appellant had requested permission on several occasions to leave the Frankfurt area 'and it had been granted.

After hearing the evidence, the military judge ruled that he accepted facts set forth in the chronology and "find that the government is accountable for 140 days, as is undisputed." He further held the cancellation of appellant's leave and the requirement to receive permission prior to departing the Frankfurt area were proper functions of command and not the type of restraint envisioned by R.C.M. 304(a)(1).

The military judge further ruled that the order to appellant to stay away from the questioned document area, that is, the Frankfurt Crime Laboratory, was also a proper function of command as appellant had no inherent right as a soldier or citizen to be in that area; consequently, that restraint was not the type envisioned by R.C.M. 304(a)(1). The military judge, because none of the so-called restrictions constituted restraint on liberty under R.C.M. 304, denied the motion. He made no specific time accounting under R.C.M. 707 other than the cryptic statement quoted above.

We agree with the military judge that none of the conditions imposed upon appellant met the requirements of R.C.M.

---

**1.** The version of R.C.M. 707 applicable to this trial read as follows:

> *Rule 707.  Speedy Trial.*
> (a) *In general.* The accused shall be brought to trial within 120 days after notice to the accused of preferral of charges under R.C.M. 308 or the imposition of restraint under R.C.M. 304, whichever is earlier.

304(a)[2] and constituted a restraint on liberty within the meaning of that rule. Consequently, R.C.M. 707 was not triggered until the charges upon which appellant was convicted were preferred on 24 February 1986.

The granting of ordinary leave is a function of command and a privilege granted military members when such approval is consistent with the maintenance of operational missions and essential supporting functions.[3] The commander's cancellation of appellant's leave while he was under investigation by police authorities was a proper exercise of denial of that privilege consistent with valid operational requirements. *See also* R.C.M. 304(h).[4]

Captain Brent's order to appellant not to leave the Frankfurt area without permission was also a proper exercise of his command function and not a restraint of liberty. The order imposed upon appellant the requirement that, if he desired to leave the Frankfurt area, he would get permission before he departed. The record clearly demonstrates that at no time was he in fact denied permission to leave the Frankfurt area. Considering that appellant was assigned to an overseas command in which a high rate of readiness is consistently maintained, we find nothing unreasonable about this requirement, and certainly, no restraint on liberty. *See* R.C.M. 304(h).

■ Appellant's complaint that he was not permitted to return to his former place of employment also lacks merit. Appellant was formerly a U.S. Army Criminal Investigation Command agent assigned the duty as a questioned document examiner in a

forensic crime laboratory, that is, the U.S. Army Criminal Investigation Command Laboratory, Frankfurt, West Germany. His credentials as an agent had been removed when he became a suspect in the investigation and, as government counsel points out, appellant had no more right to enter the questioned document area than any other member of the Army.[5]

Finally, there remains the statement included in the Stipulation of Fact that "[t]he government agrees it is accountable for 140 days from 16 December 1985 until 30 May 1986 the date of trial," and the military judge's finding that he accepted the facts set forth in the chronology that the government was accountable for 140 days. Appellant asserts the government's stipulation mandates we find 140 days government delay as defined by R.C.M. 707. This is clearly not the interpretation given the stipulation by either government counsel or the military judge at trial. In the face of the "stipulated" facts, trial counsel argued there was no speedy trial violation—an anomaly if he, in fact, stipulated to such a violation. Nor, obviously, did the military judge deem the "stipulated" facts to require dismissal inasmuch as he rendered a careful and analytical ruling properly excluding delay time under R.C.M. 707(c). Thus, we believe the statement was merely an inartfully drafted sentence setting out total elapsed time, not a conclusion binding trial counsel, the trial court, and this court.

Our view of the evidence indicates that the prosecution was accountable from the date the charges were preferred, 24 Febru-

2. *Rule 304. Pretrial Restraint.*
   (a) *Types of pretrial restraint.* Pretrial restraint is moral or physical restraint on a person's liberty which is imposed before and during disposition of offenses. Pretrial restraint may consist of conditions on liberty, restriction in lieu of arrest, arrest, or confinement.
   (1) *Conditions on liberty.* Conditions on liberty are imposed by orders directing a person to do or refrain from doing specified acts. . . .

3. *See generally,* Army Regulation 630–5, Personnel Absences: Leave, Passes, Permissive Temporary Duty, and Public Holidays, para. 2–2 (1 Jun 1975) (C2 18 Mar 1977).

4. R.C.M. 304(h) provides:
   *Administrative restraint.* Nothing in this rule prohibits limitations on a servicemember imposed for operational or other military purposes independent of military justice, including administrative hold or medical reasons.

5. The working areas of the crime laboratory, like hospital operating rooms, signal centers, operation centers, and other classified or restricted areas, are simply not open to the public at large regardless of whether the individual is military or civilian.

ary 1986, to the date of trial, 30 May 1986, a period of ninety-five days, from which twenty-four days of delay[6] should be deducted, leaving the prosecution accountable for seventy-one days processing time, a period well under the 120–day requirement of R.C.M. 707(a). Accordingly, we find no error was committed here.

## II

Appellant further alleges he was prejudiced when the military judge failed to give a sua sponte instruction to limit the effect of the testimony of a government witness during the sentencing proceeding.

During the government's aggravation case on sentencing, Lieutenant Colonel (LTC) Leson, the Commander of the Frankfurt Criminal Investigation District, testified, in part, as follows:

Q [Question]: Sir, in the course of normal CID procedures, what information about this case, and to whom, is going to be put out by the CID Command?

A [Answer]: Well, we have bona fide methods of putting out MO [modus operandi] information. One of them is our criminal information report. And if we go into review right now and review the MO here, particularly from a professional man's approach committing this crime, if you will, we now find ourself in a position where we will take this—if it hasn't been done already—and take his MO and put it out on what we call a CrimIntel, or Crim Info, report on our— we have a closed net that we can go out and put that into all of our agencies, so we can be on alert for this type of modus operandi and, of course, police our own ranks should, God forbid, it occur again.

Now, of course, I always say—and this is halfway facetious that, if there was a CID agent on the Pueblo, I am convinced that, of those who remember the Pueblo, that that ship wouldn't have been taken, because we have a grapevine—because of the way we work—that is probably second to none, in terms of passing infor-

mation along. We have to be that way by the nature of the beast. So we have a situation right now where I can guarantee everybody in this room that, one, the eyes of CID are on this courtroom, for the reason that this is the first, at least in the lab system's perspective—not to say, by the way, that CID agents are pristine clean; CID agents do get into trouble and we have a regulation that polices those problems, but in this case here—you can rest assured that CID is watching it as an entity, and that the word will be out, and is out, with regard to this individual's behavior.

We do not view the foregoing testimony as an invasion of the court-martial's province to determine an appropriate sentence. *United States v. Pearson*, 17 M.J. 149, 153 (C.M.A.1984). LTC Leson was telling the court members the "eyes of the CID" were on the trial to ascertain appellant's modus operandi for criminal intelligence purposes. LTC Leson was *not* telling the court members the CID was watching over their shoulders to ensure a harsh sentence for a "bad cop." Accordingly, we find no error in allowing the testimony without a cautionary or limiting instruction, sua sponte, by the military judge.

The inquiry does not end there, however, because the trial counsel argued, *inter alia*, on sentencing as follows:

Now, the judge has told you there are several purposes in which you can take into account, purposes of punishment that should be considered when you reach a sentence, and the government suggests that you carefully consider all of them. Let's just focus on a couple of them.

. . . . .

Look at another area, deterrence. What kind of message will you send from this courtroom today? What will you tell the other CID agents in Frankfurt? In the Army? Colonel Leson has told you that the message will ring loud

---

6. The twenty-four days of delay are the twenty-three days of defense delay noted earlier, plus one day of trial devoted to pretrial motions. R.C.M. 707(c)(1)(C) and 707(c)(3).

and clear from this court. Will that message be that warrant officers are not punished? That CID agents are treated special? That criminal investigators will not go to jail? That is not the message to send from this courtroom. The appropriate message is one that will ring loud and clear that the military justice system is just and it is equitable, and the military does discipline itself and will discipline itself, and will not tolerate such serious misconduct among its own....

■ It is obvious trial counsel's sentencing argument mischaracterized LTC Leson's testimony. Trial defense counsel did not, however, object to trial counsel's argument, and the failure to object, absent plain error, constitutes waiver of the objection. *United States v. Williams*, 23 M.J. 776, 781–83 (A.C.M.R.1987) (en banc). There is no plain error here. *See United States v. Williams*, 23 M.J. at 782–83.

### III

■ It is apparent to us from the language of the larceny and forgery specifications that each forgery specification is multiplicious for findings with its corresponding larceny specification. Appellant was not prejudiced on sentence because the military judge instructed that the larceny and forgery specifications were multiplicious for sentencing.[7]

The court has considered those assignments of error set forth by appellant under *United States v. Grostefon*, 12 M.J. 431, 436 (C.M.A.1982), and find that they are incorporated in the foregoing assignments of error discussed above or otherwise lack merit.

The findings of guilty of Charge III and its specifications (forgery) are set aside and that charge and its specifications are dismissed. The remaining findings of guilty and the sentence are affirmed.

DeFORD, Senior Judge: concurring in part, dissenting in part, but concurring in the result:

My brother judges' views and my own coincide with regard to parts I, III, and the affirmance of the findings and sentence in this case. However, we are in disagreement with regard to part II as to whether the testimony of LTC Leson in aggravation of punishment constituted error before the court.

LTC Leson's statements are set forth in the majority's opinion and I will not repeat that testimony. I agree that Leson's statement was in response to the trial counsel's question concerning what information about the case was going to be put out by the CID command. However, Leson's response to that question, whether intentional or not, far exceeds its scope and entered a prohibited area when he stated that the "eyes of the CID" were on the courtroom because this case was the first involving an agent belonging to the laboratory and that the CID was watching it as an entity.

Appellant's counsel invite our attention to *United States v. Pearson*, 17 M.J. 149, 153 (C.M.A.1984). There a marine was charged with murder but convicted of the lesser included offense of negligent homicide. After findings, the prosecution offered two witnesses in aggravation. The first witness testified among other matters that the victim's entire squadron were waiting to find out the verdict of the court. The second witness, the victim's father, testified that he was trying to think how he could return to his hometown and explain that the verdict was negligent homicide. No objection to either witnesses' testimony was made by defense counsel. *United States v. Pearson*, 17 M.J. at 151. The court-martial returned the maximum sentence. *Id.* at 153.

Relying on the fact that the court-martial returned the maximum sentence, the United States Court of Military Appeals held that the prosecution witnesses's testimony

---

7. Appellant, through counsel, requested a dishonorable discharge in lieu of any sentence to confinement.

so blatantly invaded the province of the court members that curative instructions were required notwithstanding the lack of objection by counsel. *Id.*

Military Rule of Evidence 103(a) provides that error may not be predicated upon a ruling which admits or excludes evidence unless the ruling materially prejudices a substantial right of a party and a timely objection or motion to strike appears on the record stating the specific ground of objection.

It is my view that here, as in *Pearson,* LTC Leson's statements invaded the province of the court. The obvious inference the testimony conveyed was that here was a bad cop, the first of such from the crime laboratories; that the entire CID was watching the outcome of the case; and, that a severe punishment was required.

Trial counsel used this same theme in his closing argument. However, this case is clearly distinguishable from *Pearson* in that the court returned a relatively moderate sentence and the error committed here was not as egregious as in *Pearson.* Consequently, I do not view the error as so blatant to constitute plain error. Trial defense counsel should have objected to the testimony of LTC Leson and to the closing argument of the trial counsel. His failure to make such objections waived the errors. Mil.R.Evid. 103(a); *United States v. Doctor,* 21 C.M.R. 252 (C.M.A.1956); *United States v. Williams,* 23 M.J. 776, 782–83 (A.C.M.R.1987) (en banc). Accordingly, I join the majority in affirming the findings and sentence in this case.